426 A.2d 1173

**Stephen J. DORSEY, Jr., Appellant,**

**v.**

**HARLEYSVILLE MUTUAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued March 11, 1980.

Filed March 6, 1981.

John V. Hasson, Ambler, for appellant.

Edward F. Kane, Norristown, for appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant Stephen J. Dorsey, Jr. was injured in an automobile accident on July 30, 1975. As a result of the accident, Mr. Dorsey's left wrist had to be fused, causing a permanent loss of flexibility in that joint, and an inability (not necessarily permanent) to fully close the left hand or to fully flex the left elbow. In 1977, Mr. Dorsey began receiving social security disability payments for an 80% disability. He has not worked since the date of the accident.

Mr. Dorsey's insurance company, appellee herein, paid all medical bills, but disputed the amount claimed by Mr. Dorsey as work loss benefits, and offered to pay only the amount of $5.77 [1] per week. Complaint was filed against the insurance company, and a non-jury trial was held on October 10, 1978. The lower court, by Opinion and Order dated April 18, 1979, found for the insurance company, and appellant filed this appeal with our Court.

Appellant argues that the lower court erred in its interpretation of how to calculate "probable annual income", as that term is used in § 205(c) and defined in § 205(d) of the Pennsylvania No-fault Motor Vehicle Insurance Act.[2] It is not entirely clear from the record how the lower court interpreted the Act, except that the lower court, in its

1. The insurance company arrived at this amount by looking at appellant's earnings in the three years immediately preceding the accident. In 1973, appellant earned $900.46; in the other two years he earned nothing. The average annual gross income for these three years would then be $300.15, and the weekly gross would be $5.77.

2. Act of July 19, 1974, P.L. 489, No. 176, § 101 et seq., 40 P.S. § 1009.101 et seq.

opinion of April 18, 1979, clearly rejected calculation of "probable annual income" based on *any* three years prior to the accident that the insured might choose. Such an interpretation is not now urged by appellant on appeal, and we are unable to determine whether that was appellant's position in the lower court. At any rate, a close examination of § 205 is necessary in order to determine how the calculation should be made.

Section 205(c) of the Act provides: "The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by: (1) determining his probable weekly income by dividing his *probable annual income* by fifty-two; and (2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim *would reasonably have been expected to realize income* during the accrual period." (Emphasis added). "Probable annual income" is defined in § 205(d) for a victim who was not employed at the time of the accident, "absent a showing that it is or would be some other amount", as "the average annual gross income earned by the victim from work *during the years in which he was employed,* not to exceed three, preceding the year in which the accident resulting in injury occurs . . . ." (Emphasis added).

It seems fairly clear from this language that in the case before us appellant's "probable annual income" should be calculated by averaging his gross annual income from the years 1969, 1970 and 1973, the three years in which he was employed preceding the accident. Accepting for the present, appellant's calculation of $4,668.83 as the average for those three years,[3] then appellant's "probable annual income" would be $4,668.83 and his "probable weekly income" would be $89.78 (assuming that no evidence was introduced by any party to show that the "probable annual

**3.** This figure appears only in appellant's brief. We are unable to confirm this figure, since documents made part of the record indicate the hourly wage earned by appellant at different periods in 1969, and the weekly wage earned by appellant in 1970, but do not indicate the number of hours worked per day or the number of days or weeks worked per year.

income" would be some other amount). As part of the final step in calculating "work loss", the finder of fact must determine "the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income . . . ." In the case before us, the fact-finder, the trial judge, found that appellant had no reasonable expectation of realizing income. Accepting this finding, we would have to conclude that appellant is not entitled to any money for work loss, since zero weeks of expected employment multiplied by 89.78 "probable weekly income" equals nothing. Appellant argues, however, that the lower court erred in holding that appellant had not proven that he would reasonably have been expected to realize income during the accrual period.

Appellant was the only person who testified at trial. According to his testimony, he had been a welder since 1952, but had lost his job in November, 1970, due to a business slowdown: "Welders started to become a dime a dozen. Most welders I knew were looking for jobs." Appellant was employed for approximately five months in 1973 with Montgomery Township on a road crew, but was laid off when "they got slow." He applied for employment with three places after losing that job, but without success. Appellant testified that the job market for welders opened up in 1975, but that he was then unable to weld because of the injury to his wrist.

The trial judge's findings of fact have the same weight as a jury's verdict, and should not be disturbed on appeal if based on sufficient evidence in the record. *Idell v. Falcone*, 427 Pa. 472, 474, 235 A.2d 394 (1967); *Girard Trust Corn Exchange Bank v. Brink's, Inc.*, 422 Pa. 48, 53, 220 A.2d 827 (1966). In the case before us, appellant testified that he had attempted to obtain work during the period between November 15, 1970 and the date of the accident, but had been unable to find employment in the only trade for which he had been trained, due to an over-abundance of welders and to a business slowdown. Appellant also testified that welding jobs had started to open up in 1975, but at the time the

injury to his wrist prevented him from obtaining a job. Appellee did not challenge this testimony or introduce any testimony of its own of any kind.

In light of these facts, we cannot find that the record supports the conclusion of the lower court that appellant would have had no reasonable expectation of realizing income had he not been hurt. Since the record does not enable us to precisely determine the amount of appellant's wages in 1969 or 1970, and since we are unwilling to accept the amount specified in appellant's brief as the average for the years 1969, 1970 and 1973, we remand to the court below for calculation of wage loss due appellant, such calculation to be made as illustrated in this opinion.

Vacated and remanded.