451 A.2d 506

Dorothy H. HARTLEB, Administratrix of the Estate of
Philip Hartleb, Deceased,

v.

The OHIO CASUALTY INSURANCE COMPANY, Appellant.

Betsy L. WHITE, Administratrix of the Estate of Harold
Mayoros, Deceased, John Mayoros and Norma
Mayoros, his wife,

v.

The OHIO CASUALTY GROUP OF INSURANCE
COMPANIES, Appellant.

Dorothy H. HARTLEB, Administratrix of the Estate of Philip
Hartleb, Deceased, Appellant,

v.

OHIO CASUALTY INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Feb. 8, 1982.

Filed Oct. 1, 1982.

232

William J. Schaaf, Erie, for Ohio Casualty, appellant in Nos. 525 and 526 and appellee in No. 552.

John Quinn, Erie, for Hartleb, appellant in No. 552 and appellee in Nos. 525 and 526.

William T. Jorden, Meadville, for White, appellees in No. 526.

Before BROSKY, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

This is a consolidated appeal which involves the question of whether proof of dependency is a prerequisite to recovery of work loss or survivors' benefits under the No-Fault Motor Vehicle Insurance Act. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.* (Supp.1980–81). The trial court granted summary judgment in favor of both plaintiffs-appellees on the work loss issue and in favor of the defendant-appellant on the survivors' benefits issue. We affirm in part and reverse in part.

The facts in the instant case were set forth by the trial court in the following manner:

The two cases were filed against appellant, the Ohio Casualty Insurance Company. In *Hartleb,* the plaintiff's decedent died as a result of injuries sustained in an auto accident. At the time of his death, the decedent was twenty-seven years of age and single. Decedent is survived by his mother, the administratrix of the estate, and four sisters. It is conceded that neither his mother nor his sisters were dependent upon the decedent for support.

In *White,* the plaintiff's decedent also died as a result of an automobile accident. The decedent's parents are handicapped and decedent contributed $60.00 per month towards their support but it was stipulated that they were not dependent upon the decedent.

In both cases, the plaintiffs initially requested payment of survivors' benefits and work loss benefits pursuant to the insurance policies written by the defendant company and in effect at the time of the decedents' deaths. However, the plaintiff in *White* has since withdrawn her demand for survivors' benefits and now challenges only the defendant's refusal to pay work loss benefits. Defendant has refused payment on the grounds that work loss benefits are payable only to dependent survivors of the deceased and, in each instance, it has been stipulated that the decedents' survivors were not dependents. The trial court granted the work loss benefits but denied the survivors' loss benefits. Final judg-

ments were entered in the amount of $15,000.00 plus interest at 18% as work loss benefits in each case, and judgment was entered in appellant's favor on the survivors' loss issue. This consolidated appeal thus followed.

██ The issues before this Court are controlled by our recent decisions in *Chesler v. Government Employees Insurance Company,* 302 Pa.Super. 356, 448 A.2d 1080 (1982) and in *Freeze v. Donegal Mutual Insurance Company,* 302 Pa.Super. 344, 447 A.2d 999 (1982). In *Chesler,* this Court addressed the question of whether the mother of a decedent who was not financially dependent on the decedent at the time of death could collect survivor's loss benefits under section 103 of the No-Fault Insurance Act.[1] This Court concluded that the mother was entitled to such benefits when it stated the following:

"We hold today that the word '*dependent*' contained in the definition of 'survivor' in Section 103 of the No-Fault Act, *does not modify* the entire subsection, *i.e.* the words '*child, parent, brother, sister,*' but was intended by the General Assembly to modify only the word immediately preceding it—'relative.' Because the lower court erred in arriving at a different reading of the Act its order denying appellant the survivor's loss benefits she sought must be reversed."

1. The relevant portions of Section 103 provide:
" 'Survivor' means:
(A) spouse; or
(B) child, parent, brother, sister or relative dependent upon the deceased for support.
'Survivor's loss' means the:
(A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivors, if such victim had not sustained the fatal injury; and
(B) expenses reasonably incurred by a survivor or survivors, after a victim's death resulting from injury, in obtaining ordinary and necessary services in lieu of those which the victim would have performed, not for income, but for their benefit, if he had not sustained the fatal injury,
reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the victim's death resulting from injury."
40 P.S. § 1009.103

*Chesler v. Government Employees Insurance Company,*
302 Pa.Super. at 365, 448 A.2d at 1085. (Emphasis added).

In view of the above, decedent's mother and four sisters in *Hartleb* were entitled to receive survivors' benefits. Accordingly, we must reverse the trial court's order which granted judgment in favor of the defendant on this issue.

■  With respect to the work loss benefits question, this Court's decision in *Freeze* is controlling.[2]

In *Freeze,* the decedent's father instituted action on behalf of his son's estate in order to recover work loss benefits. After examining the applicable statutes, we "h[e]ld . . . that the estate of a deceased victim is entitled to recover work loss benefits under the No-Fault Act." 302 Pa.Super. at 354, 447 A.2d at 1004 (footnote omitted). Accordingly, the estates of both decedents in the instant appeal are entitled to recover work loss benefits.

Since this Court's decision in *Freeze,* we also have elaborated on this issue:

> "[I]f the Legislature had intended that 'work loss' benefits be recoverable by a decedent's estate only after the establishment of 'dependency,' it would have so stated. *See* D. Shrager, The Pennsylvania No-Fault Motor Vehicle Insurance Act, 109 & 110. Additionally, since insurance statutes are not among those types of statutes designated by our Legislature as requiring strict construction, we are to construe them liberally in order to effect their purpose. *Mattia v. Employers Mutual Companies,* [294] Pa.Super. [577], 440 A.2d 616 (1982). In assiduously reviewing the No-fault Act, this Court finds no requirement of proving 'dependency' in order to recover 'work loss'. In fact, in

**2.** Section 103 defines "work loss" in the following manner:
   " 'Work loss' means:
   (A) loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this act; and
   (B) reasonable expenses of a victim for hiring a substitute to perform self-employment services, thereby mitigating loss of income, or for hiring special help, thereby enabling a victim to work and mitigate loss of income."

defining 'work loss,' the No-fault Act nowhere mentions survivor or survivors; thus, no showing of 'dependency' is necessary.[*]   *See Heffner v. Allstate Insurance Co., supra,* 265 Pa.Super. [181] at [187], 401 A.2d [1160] at 1162–1163 ("Historically, the courts of this Commonwealth have routinely ... found coverage for the insured in close or doubtful insurance cases.   The tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured.'   (Quoted with approval in *Allstate Insurance Co. v. Heffner, supra,* 491 Pa. [447] at [455], 421 A.2d [629 at] 633)).   Moreover, appellant-Roger Miller does not request the Court to award the 'work loss' benefits to him as a survivor.   Rather, Mr. Miller, in his capacity as duly appointed administrator, seeks to secure such benefits on behalf of his parents' estates. Surely, such estate has suffered a 'loss' as that term is defined in the No-fault Act.[**]   40 P.S. § 1009.103.   Consequently, in conclusion, we hold that the decedents' estates are entitled to recover 'work loss' benefits of the deceased victims under the No-fault Act, without first having to establish 'dependency' upon the deceased victims as a *sine qua non* to recovery.

[*] We note that a different result is not mandated by *Midboe v. State Farm Mutual Automobile Insurance Co.,* 495 Pa. 348, 433 A.2d 1342 (1981) (plurality) (O'BRIEN, C.J., filed an Opinion in Support of Affirmance in which ROBERTS and FLAHERTY, JJ., joined; NIX, J., filed an Opinion in Support of Reversal; LARSEN, J., filed an Opinion in Support of Reversal in which KAUFFMAN, J., joined). There, the Court held that the appellant-mother of a deceased minor child was required to prove dependency on the deceased to recover basic loss benefits under the No-fault Act.   Since the case dealt specifically with the appellant's right to *'survivor's loss'* benefits under her No-Fault insurance policy, we find that it does not control the case *sub judice.*

[**] Section 103 of the No-fault Act defines 'Loss,' in pertinent part, as the 'accrued economic detriment resulting from injury ... consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss.'   Since injury means death, as well as non-fatal injury, Section 103 can be read to mean that work loss is an accrued economic detriment resulting from death. *Heffner v. Allstate Insurance Co., supra,* 265 Pa.Super. at 188, 401 A.2d at 1163."

*Miller v. United States Fidelity and Guaranty Company,*
304 Pa.Super. 43, 54, 450 A.2d 91, 97 (1982) (Footnote
omitted).

Similarly in the instant case, since both parties are seeking
"work loss" benefits on behalf of the estate, dependency
need not be proven.[3]

■ Appellant next argues that the court below erred
when it concluded that the 18% overdue interest charge
began to run from the date on which the work loss benefits
were to be paid rather than from a date forty-five (45) days
after an application was filed for those benefits. We cannot
agree.

The relevant statute, Section 106 of the No-Fault Act,
provides the legal framework for our examination of this
issue:

**"§ 1009.106  Payment of claims for no-fault benefits**
**(a) In general.—**

(1) No-fault benefits are payable monthly as loss ac-
crues. Loss accrues not when injury occurs, but as allowa-
ble expense, work loss, replacement services loss, or sur-
vivor's loss is sustained.

(2) *No-fault benefits are overdue if not paid within*
*thirty days after the receipt by the obligor of each submis-*
*sion of reasonable proof of the fact and amount of loss*
*sustained,* unless the obligor designates, upon receipt of an
initial claim for no-fault benefits, periods not to exceed

---

**3.** Even though the caption indicates that the parents of Harold
Mayoros, the decedent, and the administratrix, Betty White, are
parties to the action, the brief filed indicates that the parents are not
arguing that they are entitled to collect work loss benefits in their
own right. Brief for Appellant at 5; *See also Allstate Insurance Co.*
*v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980). Rather, the brief
indicates that "the issue presented in this case is whether the estate
of the deceased victim is entitled to receive the $15,000.00 work loss
benefits." *Id.* Additionally, we repeat that the parents of Harold
Mayoros "have not pursued a claim for survivor's benefits of
$5,000.00 since it is stipulated that the $60.00 per month amount that
their son sent to them did not make them dependent upon their son
for support." Brief for Appellant at 10. Thus, the Mayoroses have
abandoned their claim that they are entitled to receive survivors'
benefits.

thirty-one days each for accumulating all such claims received within each such period, in which case such benefits are overdue if not paid within fifteen days after the close of each such period. If reasonable proof is supplied as to only part of a claim, but the part amounts to one hundred dollars $100) or more, benefits for such part are overdue if not paid within the time mandated by this paragraph. An obligation for basic loss benefits for an item of allowable expense may be discharged by the obligor by reimbursing the victim or by making direct payment to the supplier or provider of products, services, or accommodations within the time mandated by this paragraph. Overdue payments bear interest at the rate of eighteen per cent (18%) per annum. . . ." (emphasis added)

According to appellant, "the work loss benefits should be payable over a fifteen-month period and any interest penalty should be calculated from the date in which such monthly payment is due" since the No-Fault Act indicates that " 'work loss' benefits are to be provided by the insurance company up to a *monthly maximum* of $1,000 with a total maximum of $15,000. 40 P.S. Section 1009.202(b)".[4] Brief for appellant at 11. (Citation omitted). Appellant, however, ignores subsection (b)(2) which provides for work loss "up to a total amount of fifteen thousand dollars $15,-000.00." Under the circumstances of this case, we conclude that the trial court did not err when it awarded the 18%

4. Section 202(b) provides:
"(b) **Work loss limits.**—Work loss, as defined in section 103 [infra at ftn. 2] shall be provided:
(1) up to a monthly maximum of:
(A) one thousand dollars ($1,000) multiplied by a fraction whose numerator is the average per capita income in this Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures; or
(B) the disclosed amount, in the case of a named insured who, prior to the accident resulting in injury, voluntarily discloses his actual monthly earnings to his obligor and agrees in writing with such obligor that such sum shall measure work loss; and
(2) up to a total amount of fifteen thousand dollars ($15,000). . . ."

interest payment because, obviously, there was no chance that the deceased victim would return to work.

■ The trial court refused to award appellees' attorney's fees since it concluded that appellant's "refusal to pay the claims was based on good faith regarding a legitimate issue of law." Trial Court's Opinion at 2. Our review of this issue also leads us to the conclusion that the trial court did not abuse its discretion. The recent case law, *Freeze, Chesler,* and *Miller,* lends credence to the trial court's ruling.

The orders granting partial summary judgments are affirmed in part and reversed in part, and the case is remanded to compute the damages to which the survivors of decedent, Philip Hartleb, are entitled.