454 A.2d 1078

**Betty J. MINIER, Individually and as Executrix of the Estate of Leonard R. Minier, Sr.,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 16, 1981.

Filed Dec. 30, 1982.

Petition for Allowance of Appeal
Denied Dec. 29, 1983.

54

James J. McCabe, Philadelphia, for appellant.

John F. Campana, Williamsport, for appellee.

Before McEWEN, JOHNSON and WATKINS, JJ.

JOHNSON, Judge:

The order appealed from granted appellee's motion for partial summary judgment and awarded her the work loss benefits which she claimed due her under the Pennsylvania No-fault Motor Vehicle Insurance Act [1] [No-fault Act].

Appellee is the widow and executrix of the estate of Leonard R. Minier, Sr., who died in a motor vehicle accident on April 15, 1978. At the time of the accident the decedent was insured by the appellant insurance company [State

1. Act of July 19, 1974, P.L. 489, No. 176, Art. I *et seq.;* 40 P.S. § 1009.101 *et seq.* (Purdon Supp.1982).

Farm]. Under the policy State Farm paid certain no-fault benefits—survivor's loss, funeral expenses and medical expenses—but denied Mrs. Minier's claim for work loss benefits. On December 3, 1980, therefore, Mrs. Minier filed a complaint seeking the work loss benefits which the appellate courts of this commonwealth had determined were due the survivors of deceased motor vehicle accident victims. *See Heffner v. Allstate Insurance Co.,* 265 Pa.Super. 181, 401 A.2d 1160 (1979), *aff'd,* 491 Pa. 447, 421 A.2d 629 (1980). In its answer and new matter State Farm asserted firstly that *Heffner* should not be applied retroactively, secondly that because the decedent had retired from his employment and was on a pension, there was no work loss for which benefits should be paid, and thirdly that the survivor's loss benefits paid should be excluded from any work loss benefits. These same three issues are raised before this court in State Farm's appeal from the order granting partial summary judgment in Mrs. Minier's favor.[2]

This court has decided, in *Baker v. Aetna Casualty & Surety Co.,* 309 Pa.Super. 81, 454 A.2d 1092 (1982), that the decision in *Heffner, supra,* is to be applied retroactively to all cases not barred by the applicable statute of limitations. We do not need to discuss this issue further. Appellant's first contention, therefore, fails.

The issue of whether or not there should be a recovery of work loss benefits under the No-fault Act where the decedent had retired from employment has not been decided by an appellate court. The lower court responded to State Farm's assertion—that retired persons are not entitled to work loss benefits—by stating that it was aware of no authority for such an assertion, which it considered to fly in the face of the language of the No-fault Act providing for recovery of work loss benefits even where there is no work history on the part of the decedent.[3]

2. The lower court denied Mrs. Minier's request for attorney's fees. No appeal was taken from that part of the order.

3. *Minier v. State Farm Mutual Automobile Insurance Co.,* No. 80–0366, slip op. at 1–2 (C.P. Lycoming County, April 30, 1981).

We agree. State Farm provides us with no authority for its position, other than the absence of language concerning retired persons in the No-fault Act. In Article II of the No-fault Act, concerning the right to benefits, the legislature described the method of calculating work loss benefits for certain categories of victims, namely those "regularly employed", "seasonably employed" and "not employed". 40 P.S. § 1009.205. The calculations involve a determination of "probable weekly income." For those victims who are unemployed at the time of the accident the following method is described:

(c) **Not employed.**—The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period.

40 P.S. § 1009.205(c). The work loss section further provides:

(d) **Definitions.**—As used in this section:

"Probable annual income" means, absent a showing that it is or would be some other amount, the following:

.    .    .    .    .

(B) the average annual gross income earned by the victim from work during the years in which he was employed, not to exceed three, preceding the year in which the accident resulting in injury occurs, for a victim seasonally employed or not employed at the time of the accident[.]

40 P.S. § 1009.205(d).

The No-fault Act, then, does not require questions to be asked as to the reason why a victim is not employed at the time of the accident. Nor does it make any distinctions, other than in the method of calculation, between those who

have been laid off, those never employed, those who have quit, or those who have retired. It provides for some recovery of work loss benefits for those who were not employed at the time of the accident, notwithstanding the reason for their lack of employment, depending on some probability of income forthcoming had the accident not happened.

A rule that survivors of those persons killed after having retired from employment should not be entitled to recover work loss benefits would add an exclusion to the statute not provided for by the legislature.[4] Such a rule would also flout the avowed purpose of the statute which is in part "the maximum feasible ... compensation of the economic losses of the survivors of *all* individuals killed in motor vehicle accidents ...." 40 P.S. § 1009.102(a)(3) (emphasis added). Furthermore, by its very terms the statute places some limits on the provision of work loss benefits. *See* section 205 as quoted from *supra* at 1079.

In *Dorsey v. Harleysville Mutual Insurance Co.*, 285 Pa.Super. 124, 426 A.2d 1173 (1981), where the claimant had been mostly unemployed for the five years immediately preceding the accident, this court ruled that there was nevertheless a reasonable expectation that he would have realized some income if he had not been injured. This court remanded the case to the trial court for a calculation of wage loss due the claimant. The calculation was to be made as follows:

> It seems fairly clear from [the] language [of sections 205(c) and (d)] that in the case before us appellant's "probable annual income" should be calculated by averaging his gross annual income from the years 1969, 1970 and 1973, the three years in which he was employed preceding the [1975] accident. Accepting for the present, appellant's calculation of $4,668.83 as the average for those three years, then appellant's "probable annual income" would be $4,668.83 and his "probable weekly in-

---

4. *See, e.g.:* Ineligible claimants are described in section 1009.208. The statute of limitations is to be found in section 1009.106(c).

come" would be $89.78 (assuming that no evidence was introduced by any party to show that the "probable annual income" would be some other amount). As part of the final step in calculating "work loss", the finder of fact must determine "the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income ...."

285 Pa.Super. at 126–27, 426 A.2d at 1174 (footnote omitted). *See also Freeze v. Donegal Mutual Insurance Co.*, 301 Pa.Super. 344, 447 A.2d 999 (1982), holding that the estate of a deceased victim can recover work loss benefits even where the deceased victim was a minor who had never worked.

A rule barring survivors of deceased retired persons from collecting work loss benefits would be based on an assumption that all retired persons earn no further income. Such an assumption does not merit any comment. And we decline to find such a rule lurking in the interstices of the No-fault Act. The true issue in such a situation is whether the individual retired person had any "probable" income or reasonable expectation thereof. It is a matter of proof in each case.[5]

The third and final issue raised by State Farm is whether the survivor's loss benefits should be deducted from the work loss benefits so as to avoid a double recovery. State Farm asserts that the No-fault Act so provides. State Farm attempts to find such authority in section 1009.202(b) and (d) of the No-fault Act. This section provides that work loss benefits are to be provided up to a certain monthly

---

**5.** *Cf.* the cases where our trial courts have held that victims of automobile accidents are not automatically prevented by the No-fault Act from collecting work loss benefits, even where the victim was unemployed for eight years, as in *Callahan v. State Automobile Insurance Co. of Columbus, Ohio,* 18 Pa.D. & C.3d 190 (1981), or never employed, as in *Marryshaw v. Nationwide Mutual Insurance Co.,* 13 Pa.D. & C.3d 172 (1979). *See Marryshow v. Nationwide Mutual Insurance Co.,* 306 Pa.Super. 233, 452 A.2d 530 (1982). After a jury trial, and verdict for Marryshow, Nationwide moved for judgment n.o.v., which was denied. Nationwide appealed. This court affirmed, agreeing with the trial court that Marryshow, a first year college student, was entitled to work loss benefits.

maximum, with a total amount recoverable of fifteen thousand dollars, and that survivor's losses are to be provided in an amount not to exceed five thousand dollars. State Farm would have us construe the statute to mean that a survivor who recovers survivor's loss benefits must deduct them from the work loss benefits, so that the maximum work loss benefits recoverable by a surviving spouse who has recovered the maximum survivor's loss benefits would be ten thousand dollars—subtracting the five from the fifteen thousand.

This argument directly contradicts the No-fault Act. In Article II of the Act, entitled "Rights to Benefits", the Act provides in section 1009.201 that "any victim or any survivor of a deceased victim is entitled to receive basic loss benefits...." Basic loss benefits are defined in section 1009.103 as

> "benefits provided in accordance with this act for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms and conditions provided or authorized in accordance with this act."

Then in section 1009.202 there is a listing of basic loss benefits which includes in part work loss benefits, 40 P.S. § 1009.202(b), and survivor's loss benefits, 40 P.S. § 1009.-202(d). First, the act does not provide that these benefits are in the alternative. Second, certain words in section 1009.202 are imperative—work loss and then survivor's loss "shall be provided." Third, the calculation for work loss benefits, in sections 1009.202(b) and 1009.205, does not provide for a deduction of survivor's loss benefits from the work loss benefits to be paid. Fourth, there are specific provisions in the No-fault Act where certain deductions are to be made. *See, e.g.,* section 1009.206 providing that certain government benefits received by a no-fault claimant because of the injury are to be "subtracted from loss in calculating net loss", and that any income tax savings are likewise to be subtracted in "calculating net loss for work loss". Fifth, in section 1009.106(e) the No-fault Act specif-

ically provides: "Except as otherwise provided in this act, basic loss benefits shall be paid without deduction or set-off." We see no reason therefore to find merit in State Farm's assertion that the No-fault Act provides for a deduction of the survivor's loss benefits received from the work loss benefits [6] to be paid.

State Farm finds further support for its proposition in certain language by our supreme court in *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980). With respect to a double recovery argument which was raised by the insurance company in *Heffner*, our supreme court said:

> [W]e believe that in practice, recovery of survivor's loss and work loss benefits by survivors of deceased victims, will no more constitute double recovery under the Act than does recovery under analogous wrongful death and survival actions in tort law.... As we view the Act, the decedent's contribution of income under survivor's loss recovery shall be excluded from the amount recovered under work loss. In this manner, both basic loss benefits

---

**6.** Additionally, a reading of the definition of survivor's loss shows that loss of wages is not the only element of survivor's loss. The Act defines survivor's loss thus:

"Survivor's loss" means the:
    (A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivors, if such victim had not sustained the fatal injury; *and*
    (B) expenses reasonably incurred by a survivor or survivors, after a victim's death resulting from injury, in obtaining ordinary and necessary services in lieu of those which the victim would have performed, not for income, but for their benefit, if he had not sustained the fatal injury, reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the victim's death resulting from injury.

40 P.S. § 1009.103 (emphasis added). In other words, loss of income is only part of the survivor's loss benefits recoverable. Another element of survivor's loss is the costs which ensue when, as a consequence of the fatal accident, the survivor must pay someone else to perform certain tasks previously performed by the decedent. Thus, even if survivor's loss benefits were to be deducted from work loss benefits, a blanket deduction of the five thousand dollar survivor's loss benefits would be incorrect. It would first have to be determined which proportion of survivor's loss was for the loss of income of the decedent, and which was for expenses for a substitute provider of services.

will compliment [*sic*], rather than duplicate each other. It must be kept in mind that the Act sets monetary limits of $15,000 for recovery of work loss benefits and $5,000 of survivor's loss benefits. If actual losses do not reach or exceed these limits, the full amounts of these basic loss benefits need not be paid.

491 Pa. at 459–60, 421 A.2d at 636 (citations omitted).

It should be remembered that in *Heffner* the argument as to double recovery was raised in an attempt to persuade the supreme court that the No-fault Act did not provide for work loss benefits to be paid to the survivors of deceased automobile accident victims. The above statement therefore was not in response to the argument which State Farm presents to us. We are therefore not persuaded that this dictum from *Heffner* lays down the rule that the five thousand dollar survivor's loss recovery must be deducted from the fifteen thousand dollar work loss recovery. In view of the fact that work loss benefits are a statutorily mandated recovery intended to provide a low cost comprehensive compensation scheme, 40 P.S. § 1009.102(a)(4), with payment of *all* of a victim's basic medical and rehabilitative costs, and recovery of a *reasonable amount* of work loss and survivor's loss, 40 P.S. § 1009.102(a)(6)(A), we believe that State Farm's suggested interpretation flouts the spirit as well as the language of the No-fault Act.

By work loss, the act means the loss of gross income of the decedent. Survivor's loss is, in part, that portion of the gross income actually lost which the decedent would have contributed to the survivors if he had not been killed. The contribution which the decedent would have made to the survivors therefore comes out of his gross income. Survivors are entitled to recover survivor's loss benefits *and* work loss benefits, which are separate elements of the basic loss benefits provided by the No-fault Act.[7]

**7.** The terms "basic benefits," "loss of income," "net loss," "survivor's loss" and "work loss" are here used strictly in accordance with the definitions in 40 P.S. § 1009.103.

■ We conclude and therefore hold that in any calculation of the basic loss benefits recoverable, any subtractions are to be made at the level of the actual losses incurred (*gross income actually lost*), rather than at the level of the benefits recoverable. In other words, the subtraction of survivor's loss benefits from work loss benefits is made such that the portion of the gross income actually lost by a decedent which would have been contributed to the survivor(s) is subtracted from the loss of gross income of the decedent. Then, in a case where these sums exceed the maximum statutory recovery of survivor's loss benefits and work loss benefits, the survivor recovers the full statutory amount. In a case where the actual work loss does not reach the statutory maximum, the survivor recovers, as a work loss benefit, the loss of gross income of the decedent less any portion of gross income which the decedent would have contributed to the survivor *and* which the survivor is recovering under survivor's loss.

We note that the parties in this case sought to stipulate that the computation of work loss benefits would be "computed from August 31, 1979, the date when the first monthly work loss payment was overdue following notice of the claim." Reproduced Record at 79a, ¶ 11. However, decedent met his death on April 15, 1978, while the policy here under review was in full force and effect. R.R. at 78a, ¶ 4. Work loss benefits are due and payable monthly as loss accrues, and as work loss is sustained, 40 P.S. § 1009.-106(a)(1), subject only to a possible waiting period not to exceed one week, 40 P.S. § 1009.202(e)(2). We will not condone the parties', by stipulation, reducing the benefits provided by statute.

■ The trial court erroneously accepted the stipulation of the parties that the work loss benefits should be calculated from a date thirty days following the written demand for benefits, rather than from the time when the work loss was, in fact, sustained. The order of the trial court dated June 23, 1981, which entered judgment in the amount of $11,-576.21, with work loss benefits to accrue thereafter in a

fixed amount, exclusive of interest, is therefore vacated. This case is remanded to the trial court to hold hearings, as required, and for the entry of judgment in favor of Betty J. Minier and against State Farm Mutual Automobile Insurance Company for the proper amount of work loss benefits due appellee consistent with this opinion and with the No-fault Act, including the provisions in 40 P.S. § 1009.-106(a)(2) as to interest, as interpreted in *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 425 A.2d 419 (1981).

Jurisdiction is not retained.