## Kroack v. Allstate Insurance Company

276

*Charles F. Gilchrest*, for plaintiff.
*W. Allen Dill*, for defendant.

FORNELLI, *J.*, October 11, 1983 — This case comes before the court on the defendant insurance company's motion for partial summary judgment challenging plaintiff's claims for loss of earning capacity, loss of income, and attorney's fees.

The pleadings and depositions establish as undisputed that plaintiff's complaint arises out of a one-car accident on January 10, 1980, while she was insured by defendant insurance company and employed as an inventory clerk under the CETA program. Because of the injuries plaintiff sustained, she was unable to work on January 10th, but did work regularly at her job after that from January 11th, 1980, until July 15, 1980, when the CETA program under which she worked was discontinued.

Plaintiff alleges that due to this accident she suffered inter alia work loss which she claims includes the right to recover "the impairment or diminution of her earning capacity and power" under the Pennsylvania No-fault Motor Vehicle Insurance Act.[1] Also included in her claim for work loss is a claim for the period since July 15, 1980, when she became

---

1. Act of July 19, 1974, Pub. L. 489, No. 176, Art. I, sec. 101 et seq. (40 Pa. C.S. §1009.101-.111, 1009.201-.209, 1009.301, 1009.401-.408, 1009.501-.505, 1009.601-.603, 1009.701 (Purdon Supp. 1983-84)). [hereinafter cited as the Act or the No-fault Act].

unemployed after the termination of the CETA program. Plaintiff further claims attorney's fees pursuant to section 107 of the act by reason of defendant's refusal to pay these claims. Defendant's motion for summary judgment challenges plaintiff's right to recover any of these three claims. We shall consider each separately.

## (I) CLAIM FOR LOSS OF EARNING CAPACITY

Plaintiff contends that loss of earning capacity is included within the statutory definition of work loss[2] under Pennsylvania's No-fault Motor Vehicle Insurance Act and is thus recoverable in an action for no-fault benefits.

When an accident results in loss of earning capacity, it is reflected in the earnings lost. Section 924 of the Restatement (Second) of Torts (1974) embodies the Pennsylvania common law of damages applicable to work loss claims. Comment (d) of section 924 defines the loss of future earning capacity as "the difference, viewed as of the time of trial, between the value of plaintiff's services as they will be in view of the harm and as they would have been had there been no harm."

Prior to enactment of the No-fault Act, a claim for future loss of earning power was part of an action in tort, Frankel v. Todd, 393 F.2d 435 (3d Cir.), cert. denied, 393 U.S. 855 (1968), and a tort claim therefor has not been abolished by the Act. Poet v. Johnson, 21 Pa. D.&C. 3d 266, 271-72 (1982). The problem is placing such a claim within the scheme of the Pennsylvania No-fault Act, i.e., as part of the basic loss benefits recoverable from the no-fault insurance carrier and/or as part of the damages recoverable in an action against the tort-feasor.

---

2. 40 Pa. C.S. §1009.103.

Because the No-fault Act does not expressly address loss of earning capacity, we have analyzed the purposes of the legislature, the definitions and language of the Act, the case law, and other available source materials. We find a correlation exists between the statutory no-fault work loss and loss of earning capacity: The first $15,000 of loss of earning capacity in the form of lost earnings is assigned to a victim on a no-fault basis as "work-loss" under the Act.[3] Any remaining balance of loss of earning capacity,[4] if any, is assigned by the act for recovery in a tort action against the tort-feasor.[5]

Under work loss, a victim may recover past and "future" lost earnings up to $15,000 on the basis of actual loss payable as it accrues[6] pursuant to section 205 of the No-fault Act. Any recovery of loss of earning capacity to the extent that it exceeds the $15,000 limits of section 202(b)(2) of the act is relegated by the legislature to a third party trespass action consistent with section 301(a)(4) of the Act.[7]

---

3. See secs. 103, 205, and 202(b), 40 Pa.C.S. 1009.103, .205, and .202(b).

4. Earning capacity may involve types of compensation other than money, e.g. fringe benefits. McClinton v. White, 285 Pa. Super. 271, 279 n.7, 427 A.2d 218, 222 n.7 (1981) (citing Vizzini v. Ford Motor Co.,72 F.R.D. 132, 137 (E.D. Pa. 1976), vacated and remanded on other grounds, 497 Pa. 610, 444 A.2d 85 (1982)).

5. "A person remains liable for loss which is not compensated because of any limitation in accordance with section 202(a),(b),(c) or (d) of this act. . . ." 40 Pa.C.S. §1009.301(a)(4).

6. Referred to by the Superior Court as the "twin principles of accrual and actual loss." Goebel v. Hartford Accident and Indemnity Co., ____ Pa. Super. ____ , ____ 458 A.2d 212, 218, (1983).

7. Section 301(a)(4) permits an action only for the excess of the $15,000 limitation on work loss established by section 202(b). Submitting the issue of loss of all earning capacity on

The existence of this correlation between no-fault and tort recovery for loss of earning capacity is seen in the relationship of a number of sections and definitions under the No-fault Act: See section 301(a)(4) set forth at supra note 5. Section 202(b) provides: "Work loss, as defined in section 103 shall be provided: ... (2) up to a total amount of ... ($15,000)."

Section 103 of the act sets forth the following pertinent definitions:

"Loss" means accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss and survivor's loss.

"Loss of income" means gross income actually lost by a victim. . . .

"Work loss" means:

(A) loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this act; and

(B) [subject to several adjustments not here pertinent].

Section 205 sets forth the method of calculating work loss as follows:

(a) Regularly employed. — The work loss of a victim whose income prior to the injury was realized in regular increments shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

---

special interrogatory to the jury permits the court after verdict to merely deduct $15,000 from the jury award for that item of damage. There are, of course, other ways to handle it but this procedure has been followed generally by the Mercer County courts. See Plummer v. Dansky, 19 Mercer Cty. L.J. 346, 350-53 (1982).

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period.

(b) Seasonably employed. — The work loss of a victim whose income is realized in irregular increments shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by the number of weeks he normally works; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim was unable to perform and would have performed work during the accrual period but for the injury.

(c) Not employed. — The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period.

(d) Definitions. — As used in this section: "Probable annual income" means, absent a showing that it is or would be some other amount, the following:

(A) Twelve times the monthly gross income earned by the victim from work in the month preceeding the month in which the accident resulting in injury occurs, or the average annual income earned by the victim from work during the years, not to exceed three, preceding the year in which the accident resulting in injury occurs, whichever is greater, for a victim regularly employed at the time of the accident;

(B) the average annual gross income earned by the victim from work during the years in which he

was employed, not to exceed three, preceding the year in which the accident resulting in injury occurs, for a victim seasonally employed or not employed at the time of the accident; or

(C)  the average annual gross income of a production or non-supervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs, for a victim who has not previously earned income from work.

"Work week" means the number of days an individual normally works in a seven-day period; "weekly income" means income earned during a work week.

Finally, section 106(a)(1) adds the general rule that no-fault benefits are payable monthly as expenses and loss accrues. It also provides that "[l]oss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained." Thus, "future" loss of earnings is not payable on a no-fault basis until actually sustained.

In Goebel, the court analyzed the statutory scheme for the no-fault payment of up to $15,000 of work loss as follows:

Instead of attempting to calculate all the possible elements of . . . loss which a victim suffers and paying for them in advance in one lump sum, . . . lossess are paid out by the insurer as they are incurred by the victim. There is no speculation as to . . . how much an individual would have earned over his lifetime. The Act's wait-and-see approach is thus both more definite and more accurate. Goebel, at ____, 458 A.2d at 217.

Marryshaw v. Nationwide Mutual Insurance Co., 13 Pa. D.&C.3d 172, 174 (1979), aff'd 306 Pa. Super. 233, 452 A.2d 530 (1982), described this as "a

pay-as-you-go procedure" rather than a "judgment for a lump sum estimated in advance of actual monetary loss" as in a tort action.[8]

The right to sue a no-fault carrier for "future" loss of earnings up to $15,000 as work loss has been recognized by the courts. In this respect it is necessary that the accrual period required by the Act not be confused with the right to sue within the statute of limitations.

This confusion of the statute of limitations and accrual period was dealt with in Anfuso v. Erie Insurance Group, 306 Pa. Super. 567, 452 A.2d 870 (1982). It held the estate of a nine-year old child was entitled to recover "future" work loss benefits. In dealing with the defendant's argument that since the decedent was a child she would not have sustained any work loss until after the bar of the statute of limitations due to her tender years at death, the court stated:

This argument confuses the limitations on the period within which an action may be filed with the

---

8. Courts have found that a decedent's loss of future earnings are payable as work loss in a lump sum. See Hartleb v. Ohio Casualty Ins. Co., 305 Pa. Super. 231, 238, 451 A.2d 506, 510 (1982); and Kinney v. Travelers Ins. Co., 20 Pa. D.&C.3d 104, 107-108 (1981). However, Wercoch v. Liberty Mut. Ins. Co., 287 Pa. Super. 45, 52 n. 3, 429 A.2d 712, 715 no. 3 (1981) stated that lump sum payment of survivor's loss is inconsistent with the No-fault Act. Moreover, a three-judge panel consisting of two of the three judges who decided Wercoch (but none of whom were involved in Hartleb) affirmed a refusal to order lump sum payments for survivor's loss in Brauer v. Donegal Mut. Ins. Co., 229 Pa. Super. 596, 433 A.2d 556 (1981), citing footnote 3 of Wercoch. See also the opinion of Judge Adams refusing to order lump sum payment of work loss to a deceased's estate in the same case which was not appealed. Brauer v. Donegal Mut. Ins. Co., 897 of 1979 G.D. (Fayette Cty. 1979), opinion on exceptions to opinion and verdict filed Apr. 2, 1981.

accrual period within which income would presumably have been earned had the accident not intervened. The accrual period, while not defined in the Act, is defined in the Insurance Department regulations as "the number of weeks or fractions of weeks the victim sustains loss of income." 31 Pa. Code 66.1-205(a)(2). The accrual period of work loss for the child in this case would be her entire work-life expectancy, which can be actuarially calculated. The fact that her work life could not have begun for at least seven years after the accident is no barrier to a suit for work loss benefits if the suit is filed within the period mandated by Section 106(c) of the No-fault Act. The time limitations of Section 106(c) apply to the filing of a suit, but have no relevancy to the time period within which the child would have been in the work force. Id. at 570, 452 A.2d at 871.

In discussing the applicability of the No-fault Act's statute of limitation to the right to recover a decedent's future work loss, the Superior Court in Sachritz v. Pennsylvania National Mutual Casualty Insurance Co., 293 Pa. Super. 483, 439 A.2d 678 (1981), aff'd 500 Pa. 167, 455 A.2d 101 (1982) stated:

Appellant contends that her cause of action was timely because her right to recover work loss benefits accrues monthly. That contention is patently meritless. Appellant mistakenly construes section 106(a)(1) of the Act, 40 P.S. §1009.106(a)(1) as providing monthly causes of action to recover increments of work loss. We disagree. We construe the provision as establishing an expeditious schedule for payment of work loss benefits by the no-fault carrier. Id. at ____, 452 A.2d at 870.

Thus, the cause of action which permits suit for work loss and the schedule of payments for the

work loss once established are separate and distinct.

Of course, to recover for "future" work loss it is necessary to prove the probability of income forthcoming but for the accident. As held in Dorsey v. Harleysville Mutual Insurance Co., 285 Pa. Super. 124, 426 A.2d 1173 (1981), there need be a finding of a reasonable expectation that the victim would have realized some income if he had not been injured. As stated in Minier v. State Farm Automobile Insurance Co., 309 Pa. Super 53, 454 A.2d 1078, 1080 (1982): "The true issue . . . is whether the individual . . . had any 'probable' income or reasonable expectation thereof. It is a matter of proof in each case."

Thus, proof of the fact and the amount of earnings that would have been earned including the duration of the loss rests with the claimant of work loss. Section 205 of the Act establishes formulas for proof of the amount of earnings lost, but it also gives the claimant the right to show that the amount of earnings lost is different from that determined from the formulas.[9]

The right to sue a no-fault carrier for past and "future" loss of earnings up to $15,000.00 as work loss has been recognized by the Pennsylvania courts. Our appellate courts have uniformly held that work loss includes loss of future earnings upon proof of a reasonable expectation thereof in the future. For example, Anfuso v. Erie Insurance Group, 306 Pa. Su-

---

9. 40 Pa. C.S. §1009.205 takes probable weekly income times the number of weeks (or fraction thereof) the victim would have worked but for the accident. The probable weekly income is established from statutorily determinable amounts for the regular and seasonably employed and the unemployed, "absent a showing that it is or would be some other amount." Id. sec. 1009.205(d).

per. 567, 452 A.2d 870 (1982) held the estate of a deceased nine-year old girl who was never previously employed is eligible to recover no-fault work loss. Accord Freeze v. Donegal Mutual Insurance Co., 301 Pa. Super. 344, 447 A.2d 999 (1982).

Similarly, Marryshow v. Nationwide Mutual Insurance Co., 306 Pa. Super. 233, 452 A.2d 530 (1982) held that a college student who was never employed was eligible to recover no-fault work loss for "future" earnings upon proof of the fact, amount and term of the loss.

In addition, Minier v. State Farm Automobile Insurance Co., 309 Pa. Super. 53, 454 A.2d 1078 (1982) held the estate of a retired decedent is eligible for no-fault work loss benefits representing income that would have been earned during the course of retirement. Furthermore, Dorsey v. Harleysville Mutual Insurance Co., 285 Pa. Super. 124, 426 A.2d 1173 (1981) held that a victim who had been mostly unemployed for five years is eligible to recover work loss benefits upon a reasonable expectation of future income.

Thus, no-fault work loss under the Act does include loss of future earnings "depending on some probability of income forthcoming had the accident not happened." Minier at _____, 454 A.2d at 1079-80.

Future loss of earnings has long been recognized as recoverable under the Survival Act in survivor's actions filed on behalf of a decedent. Incollingo v. Ewing, 444 Pa. 263, 282 A.2d 206 (1971).

Work loss under the No-fault Act has been early recognized as providing deceased workers with a " 'certain measure of Survival Act damage[s] on a no-fault basis.' " Allstate Insurance Co. v. Heffner, 491 Pa. 447, 459, 421 A.2d 629, 635 (1980) (citation omitted); Miller v. United States Fidelity and Guar-

anty Co., 304 Pa. Super. 43, 50, 450 A.2d 91, 95 (1982) (Citation omitted).

The consideration of a victim's future earning ability in the No-fault Act is clear from the wording of section 205, which awards work loss after consideration of the victim's "probable weekly income;"[10] his "probable annual income;[11] the work weeks he lost income;[12] or during which he was unable and "would have performed work;[13] or the work weeks he would have been expected to realize income.

Thus, work loss benefits are determined by viewing the future consequences of the injuries sustained and their impact on the defendant's earning capacity.[14] This is classic loss of earning capacity even though the legislature has denominated it "work loss."

As stated in D. Shrager, The Pennsylvania No-fault Motor Vehicle Insurance Act, §1:8.2 at 32 (Supp. 1983):

It is not surprising that courts are beginning to recognize impairment of earning capacity as an element of work loss recovery. Section 202 and 301(a)(4) mandate the correlation of economic loss recovery between the no-fault and tort systems, a tort claimant being permitted to recover economic loss only in excess of recoverable basic loss benefits. Since impairment of earning capacity is a well recognized element of damage in a third-party action, it

---

10. 40 Pa. C.S. §205(a)(1), 205(b)(1), 205(c)(1), 205(d).

11. Id. sec. 205(a)(1).

12. Id. sec. 205(b)(2).

13. Id.

14. Work loss benefits may increase or decrease depending upon subsequent events, such as an increase in the minimum wage law or the availability of substitute work. Goebel v. Hartford Accident and Indemnity Co., ____ Pa. Super. ____, ____, 458 A.2d 212, 216 (1983).

is only natural and even appropriate that loss of earning power, when properly proved, be included as a [sic] element of no-fault recovery.

In discussing work loss and survivor's loss under the No-fault Act, the Superior Court in Miller quoted with approval a portion of the Shrager treatise stating that a deceased's net loss of future earnings is to be divided between the $15,000 no-fault work loss benefit ceiling and the $5,000 survivor's loss benefit with the remaining loss recoverable from the third-party tort-feasor in a separate action:

"If, for example, a decedent has an earnings loss net of cost of maintenance of $100,000 over the balance of his work-life expectancy, $15,000 will be recoverable as 'work loss' and $5,000 will be recoverable as 'survivor's loss.' The $80,000 balance of economic loss must be sought in a tort action." Miller, at ____, 450 A.2d at 95-96 (Citation omitted).

The Superior Court in Heffner also alluded to such a division of decedent's loss of earning capacity between no-fault work loss recovery and recovery from a tort-feasor of any excess beyond the $15,000 limits of 202(b). Heffner v. Allstate Insurance Co., 265 Pa. Super. 181, 190-91, 401 A.2d 1160, 1164-65 (1979), aff'd 491 Pa. 447, 421 A.2d 629 (1980).

Thus, this recognition of future loss of earning capacity as work loss and of the division of loss of earning capacity between no-fault work loss and a tort action for any excess above $15,000 of lost earnings seems to be well recognized in the reasoning of the appellate courts.

Defendant here relies on Poet v. Johnson, 21 Pa. D.&C. 3d 266 (1982). The court there held that a third party trespass action for loss of earning capacity is not abolished by the No-fault act, nor precluded by the act's provisions for no-fault work loss

benefits. That portion of the Poet holding is consistent with our holding today. Poet does not directly address the correlation of work loss benefits to the extent of their deductibility from the trespass recovery for loss of earning capacity.

However, we disagree with Poet to the extent that it holds that no-fault work loss does not include loss of earning capacity measured by lost earnings proven and calculated pursuant to section 205 of the act.

The Poet court did not have at the time of its decision the benefit of the appellate court decisions in Goebel v. Hartford Accident and Indemnity Co., ____ Pa. Super. ____, 458 A.2d 212 (1983); Minier v. State Farm Automobile Insurance Co., 309 Pa. Super. 53, 454 A.2d 1078 (1982); Marryshow v. Nationwide Mutual Insurance Co., 306 Pa. Super. 233, 452 A.2d 530 (1982); Anfuso v. Erie Insurance Group, 306 Pa. Super. 567, 452 A.2d 870 (1982); Miller v. United States Fidelity and Guaranty Co., 304 Pa. Super. 43, 450 A.2d 91 (1982). Nor did the Poet court have the analysis of the Shrager treatise appearing in its 1983 cumulative supplement.

We also cannot accept Poet's analysis that a loss of future earnings is a "non-economic detriment" recoverable under section 301(a)(5) of the Act. "Non-economic detriment" is defined in section 103 of the Act as non-pecuniary damage. Obviously, a loss of earning capacity is pecuniary damage not non-pecuniary damage and until recently it was required to be reduced to its present worth.[15] See Ha-

---

15. Hudson v. Lazarus, 217 F.2d 344, 348 (D.C. Cir. 1954) stated that permanent loss of earning capacity is usually the chief economic harm caused by permanent injury. McClinton v. White, 285 Pa. Super. 271, 288, 427 A.2d 218, 227, (1981), an action under the Survival Act, held that for purposes of determining lost future earning power the deceased may properly be viewed "as an economic unit capable of producing earnings." (Emphasis added).

vens v. Tonner, 243 Pa. Super. 371, 365 A.2d 1271 (1976); and Kaczkowski v. Bolubasz, 491 Pa. 561, 421 A.2d 1027 (1980). Zagari v. Gralka, 264 Pa. Super. 239, 244, 399 A.2d 755, 758 (1979) held that financial setbacks in one's business are not "non-economic detriment." Perigo v. Deegan, 288 Pa. Super. 93, 99-100, 431 A.2d 303, 306-07 (1981) held lost wages are not "non-economic detriment."

We also believe that Poet's analysis of work loss for the regularly employed as being merely actual lost earnings without consideration of the person's lost economic horizons is in error. It is not so narrow. Poet's analysis ignores the express language of section 205. The formulas of section 205 for wage loss are formulas to be applied only "absent a showing that it is or would be some other amount." 40 Pa. C.S. §1009.205(d).

Thus, a victim who, for example, is a third-year law student regularly employed as a waiter would have a right to show his probable annual income would be more than the waiter wages he is losing by reason of the accident. A factory employee who completed T.V. repair school the day before his accident would have a right to show that his probable annual income would be more than just his lost earnings from the factory because the accident has prevented him from receiving income from after-hours employment as a T.V. repairman.[16]

Any doubt as to the inclusion of loss of earning capacity in work loss in the form of lost earnings should be resolved in favor of its inclusion. As stated in Heffner v. Allstate Insurance Co., 265 Pa. Super. 181, 187, 401 A.2d 1160, 1162-63 (1979): "The

---

16. See comparable examples set forth in Regulations of the Insurance Department, 31 Pa. Admin. Code secs. 66.54(5) and 66.54(6) (Shepherd's 1982).

tendency has been that if [we] should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured."[17]

Thus, we hold a correlation does exist between work loss and loss of earning capacity as reflected in sections 202(b) and 301(a)(4) of the act. It is a correlation of economic loss recovery allocated between the no-fault and tort systems.

The claimant recovers proven past and "future" loss of earnings as they accrue from his no-fault carrier as work loss benefits up to the $15,000 limitation. Any earnings lost in excess of that limit and any other lowering of economic horizons that are proven to exist are recoverable as an element of damage in a tort action permitted under section 301(a)(4).

---

17. This quotation has been repeatedly cited with approval by our appellate courts in interpreting the No-fault Act. See, e.g., Wierbinski v. State Farm Mutual Auto Ins. Co., 477 F. Supp. 659, 663 (W.D. Pa.1979); Allstate Ins. Co. v. Heffner, 491 Pa. 447, 445, 421 A.2d 629, 633 (1980); Crawford v. Allstate Ins. Co., 305 Pa. Super. 167, ____, 451 A.2d 474, 476 (1982); Hartleb v. Ohio Casualty Ins. Co., 305 Pa. Super. 231, ____, 451 A.2d 506, 509 (1982); Miller v. United States Fidelity and Guaranty Co., 305 Pa. Super. 231, ____, 450 A.2d 91, 97 (1982); Guiton v. Pennsylvania Nat'l. Mutual Casualty Ins. Co., 301 Pa. Super. 146, 149-50, 447 A.2d 284, 286, vacated and remanded per curiam, ____ Pa. ____, 455 A.2d 108 (1982); Monaghan v. Pennsylvania Manufacturer's Assoc. Ins. Co., 301 Pa. Super. 419, 423, 447 A.2d 1037, 1039 (1982); Habecker v. Nationwide Ins. Co., 299 Pa. Super. 463, 468 n. 3,445 A.2d 1222, 1225 n.3 (1982); Crusco v. Ins. Co. of N. Am., 292 Super. 293, 296-97, 437 A.2d 52, 53 (1981); Erie Ins. Exchange v. Fleagle, 285 Pa. Super. 310, 314, 427 A.2d 651, 653 (1981); Tubner v. State Farm Mutual Automobile Ins. Co., 280 Pa. Super. 38, 41, 421 A.2d 392, 394 (1980); Dull v. Employers Mutual Casualty Co., 278 Pa. Super. 569, 572, 420 A.2d 688, 689 (1980).

Since work loss can include a claim for loss of earning capacity to the extent of actual earnings lost, past and future, a complaint therefor, against one's no-fault carrier is proper. However, plaintiff's claim here for impairment of earning capacity in paragraph 7 of her complaint is not limited to the statutory limitation of $15,000 set forth in section 202(b). Section 202(b) bars any claim against the no-fault carrier in excess of the $15,000.

Therefore, defendant is not liable for such excess and accordingly, defendant's summary judgment will be granted to the extent the complaint seeks recovery from defendant no-fault carrier for unlimited loss of earning capacity. Her claim up to $15,000, of course, shall remain subject to proof thereof at trial.

## II. CLAIM FOR WORK LOSS FROM JULY 15, 1980, TO TRIAL DATE

Plaintiff claims that, even though she has lost her job for reasons unrelated to her injuries from the automobile accident, she was rendered incapable of other employment because of these injuries and is entitled to work loss benefits since her last day of work on July 15, 1980.

Defendant, on the other hand, claims that plaintiff's loss of income is not the result of injuries sustained in the accident, but merely because of the discontinuance of the CETA program; and, consequently, she is not entitled to work loss benefits.

A court may grant summary judgment when no right of recovery exists on the undisputed material facts set forth in the pleadings and depositions. Taylor v. Tukanowicz, 290 Pa. Super. 581, A.2d 181 (1981).

Here, however, there are material facts in issue. A court is not to resolve such issues on summary judgment but rather its sole responsibility is to de-

termine whether such an issue exists. Tom Morello Construction Co. v. Bridgeport Federal Savings & Loan Assoc., 280 Pa. Super. 329, 421 A.2d 747 (1980).

For plaintiff to recover work loss for the period since July 15, 1980, she must prove loss of income due to the injuries sustained in the accident. In other words, she would have been able to work, but for her injuries, notwithstanding the termination of her CETA job. Erie Insurance Exchange v. Roule, 279 Pa. Super. 40, 42-46, 420 A.2d 733, 735-36 (1980); see also Coates v. Michigan Mutual Insurance Co., 105 Mich. App. 290, ____, 306 N.W.2d 484, 487 (1981). A determination of whether any work was lost as a direct consequence of the injuries plaintiff received is not here appropriate because the medical evidence is in conflict and a consequent genuine issue of material fact exists.

Relying upon the depositions of Dr. Joseph J. Conti and Dr. Vincent Rogers, defendant asserts that plaintiff was able to work and that her lack of employment is not due to any injuries received in the accident. Dr. Conti who treated plaintiff from September 18, 1980, to May 18, 1981, stated that while he treated her, plaintiff was capable of performing her employment. Conti Dep., August 27, 1982, at 32-33. Dr. Rogers stated that plaintiff had no injury as of February 16, 1981, and that any injury she may have would not causally relate to the automobile accident. Rogers Dep., August 5, 1982, Exhibit A.

Plaintiff relies upon the deposition of Dr. R. Randall Jones, who has treated plaintiff since February 22, 1982. Dr. Jones testified that plaintiff's physical activities have been severely restricted due to the accident and she is physically unable to perform any type of employment which involves sitting, stand-

ing, bending, walking, reaching, stooping or kneeling for periods in excess of one hour. Jones Dep., August 25, 1982, at 41-45.

Because of this dispute of material facts as to plaintiff's medical condition, we deny defendant's motion for summary judgment on this issue.

## III. CLAIM FOR ATTORNEY'S FEES

Plaintiff claims attorney's fees pursuant to section 107 of the No-fault Act because of defendant's refusal to pay all of her claims for work loss. Under section 107(3)[18] the court may award attorney's fees if it determines that the obligor has denied the claim without reasonable foundation. Smith v. Harleysville Insurance Co., 275 Pa. Super. 246, 248, 418 A.2d 705, 706 (1980); Pisano v. State Farm Mutual Automobile Insurance Co., 24 Pa. D.&C.3d 292, 302 (1982); Greathouse v. Federal Kemper Insurance Co., 13 Pa. D.&C.3d 785, 791 (1980). Defendant here had a reasonable foundation to resist at least part of plaintiff's claim for loss of earning capacity as held in Part I of this opinion.

Moreover, as recognized in Jones v. National Casualty Insurance Co., 20 Pa. D.&C.3d 360, 367 (Washington Cty. 1981), interpretation of the work loss provisions of the No-fault Act is an evolving area of the law. This factor must be considered in determining whether there existed a reasonable foundation for refusal of a claim for work loss. Ac-

---

18. 40 Pa. C.S. §1009.107(3) provides: "If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended."

cord Bashore v. American Manufacturers Mutual Insurance Co., 24 Pa. D.&C.3d 456, 463-64 (1982).

As to the claim for work loss since July 15, 1980, an orthopedic surgeon, Dr. Vincent Rogers, examined the plaintiff and notified the defendant that she had no injury and required no treatment. Rogers Dep., August 5, 1982, Exhibit A. We believe this is a reasonable basis for the defendant to refuse plaintiff's claim for this work loss. The defendant is not required to accept plaintiff's medical evidence and may in the absence of bad faith rely on its own expert's opinions. See Brenna v. Nationwide Insurance Co., 294 Pa. Super. 564, 440 A.2d 609 (1982).

Accordingly, we find that defendant acted in good faith in resisting both of plaintiff's work loss claims, and we grant defendant's motion for summary judgment on this issue. See Hayes v. Erie Insurance Exchange, 493 Pa. 150, 160, 425 A.2d 419, 424 (1981); Smith, at 248, 418 A.2d at 706.

## ORDER

And now, October 11, 1983, defendant's motion for summary judgment as to plaintiff's claims for impairment or diminution of earning capacity in paragraph 7 of the complaint is granted to the extent it includes a claim in excess of $15,000 income lost, past or future.

Defendant's motion for summary judgment as to plaintiff's claim for attorney's fees under section 107 of the Pennsylvania No-fault Motor Vehicle Insurance Act is granted.

Defendant's motion for summary judgment as to plaintiff's claim for work loss since July 15, 1980, to date is refused.