450 A.2d 91

Roger MILLER, Administrator of the Estate of Leon C. Miller, Deceased and Roger Miller, Administrator of the Estate of Marie B. Miller, Appellant

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY.

Superior Court of Pennsylvania.

Argued Feb. 10, 1982.

Filed Sept. 3, 1982.

Petition for Allowance of Appeal Granted Jan. 14, 1983.

---

Louis J. Stack, Meadville, for appellant.

John W. Beatty, Erie, for appellee.

Before BROSKY, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order of the Court of Common Pleas of Crawford County granting a summary judgment to the appellee-United States Fidelity and Guaranty Company (U.S.F. & G.). We reverse.

The principle issue raised is whether appellant, the duly named administrator of the decedents' (his mother's and father's) estates, is entitled to the payment of "work loss" benefits to those estates pursuant to the provisions of the Pennsylvania No-Fault Motor Vehicle Insurance Act.[1] This issue was first dealt with in the appellate division of this Commonwealth in *Freeze v. Donegal Mutual Insurance Co.,* 301 Pa.Super. 344, 447 A.2d 999 (1982), wherein the decedent's father, acting as administrator of his eleven-year-old son's estate, appealed the lower court's order denying the deceased's estate the right to collect "work loss" benefits under the No-fault Act. We reversed.

Instantly, after careful review of the statutory and case law on the subject, we are of the opinion that the lower court erred in granting summary judgment in favor of U.S.F. & G.; accordingly, we reverse and remand for further proceedings consistent with this opinion.

The facts are not in dispute. Leon and Marie Miller were fatally injured in an automobile accident occurring in Meadville, Pennsylvania, on August 12, 1978. At that time, both decedents were wage earners and were insured by the appellee, U.S.F. & G., in accordance with the No-fault Act.

Following the accident, the appellant applied for no-fault "work loss" benefits by submitting reasonable proof of the fact and amount of the work loss sustained by each decedent. U.S.F. & G. refused payment of the claim on the theory that "work loss" benefits are payable only to spouses or dependent relatives of deceased victims. In particular, appellee, in its Answer and New Matter, contended that the "Plaintiff Estates [were] not and d[id] not represent any

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.* (Supp.1981–82), hereinafter referred to as the "No-fault Act".

victims or survivors as defined in 40 P.S. Section 1009.103. The [appellee] further allege[d] that the Plaintiff Estates [were] not, and d[id] not represent any victims or survivors of a deceased victim which would be entitled to receive basic loss benefits or work loss benefits as defined in 40 P.S. Section 1009.201. Consequently, the [appellee] denie[d] that it owe[d] any benefits whatsoever, which it ha[d] not already paid, to the Plaintiff-[appellant]." The lower court, by Opinion and order entered June 18, 1981, granted appellee's Motion for Summary Judgment.

As stated *supra,* the crux of the case is whether the Legislature intended the personal representative of a decedent's estate to recover, under the No-fault Act, "work loss" benefits when there is no "survivor" of the decedent? Appellee's, U.S.F. & G.'s, contend that "work loss benefits are due and owing to estates of deceased victims only if the distributees of the estate are a spouse, or a dependent relative." (Appellee's Brief at 3) On the other hand, appellant asserts "all deceased victims are entitled to recover work loss benefits regardless of who asserts the claim. Proof of dependency by the personal representative forms no part of the calculation of the accrued economic detriment which work loss is designed to compensate." (Appellant's Brief at 6) The former view has been embraced by at least four different courts of common pleas,[2] while the latter position has been espoused by an equal number of courts of this Commonwealth.[3]

**2.** *Lerch v. State Farm Mutual Ins. Co.,* (No. 325 January, 1980 Berks County, filed Oct. 2, 1981); *Miller v. United States Fidelity and Guaranty Co.,* (No. A.D. 1980–1055 Crawford County, filed June 18, 1981); *Nye v. Erie Ins. Exchange,* (No. 5349 S. 1979 Dauphin County, filed April 30, 1981); *Ohrin v. Erie Ins. Exchange,* (No. 389 S. 1979 Dauphin County, filed April 30, 1981); *Haegle v. Pa. General Ins. Co.,* (No. 1745 February Term, 1980, Philadelphia County, filed ——/—— /——/ ).

**3.** *Cillo v. Ohio Casualty Ins. Co.,* (No. 80–0542 Lycoming County, filed April 24, 1981); *Smith v. Motorist Mut. Ins. Co.,* 129 P.L.J. 389 (1981); *Tubner v. State Farm Mut. Auto. Ins. Co.,* 496 Pa. 215, 436 A.2d 621 (1981); *Charney v. Robb,* 14 Pa.D. & C.3d 144 (Cambria Co., 1980).

Before deciding the question posed, it is necessary to set forth some of the definitional terms utilized in the No-fault Act which are germane to the case at bar, and then to review the manner in which such terms have been interpreted by the Courts. We begin with an examination of the right to *basic loss benefits* under the No-fault Act, which are paid to "any victim or any survivor of a deceased victim" if an accident resulting in injury to the victim (which encompasses bodily harm resulting in death—40 P.S. § 1009.103 (Supp. 1981–82)) occurs in this Commonwealth. 40 P.S. § 1009.201(a). Two types of basic loss benefits are "Work Loss" and "Survivors Losses":

"§ 1009.202 Basic loss benefits

\* \* \* \* \* \*

(b) Work loss limits.—Work loss, as defined in section 103 shall be provided:

(1) up to a monthly maximum of:

(A) one thousand dollars ($1,000) multiplied by a fraction whose numerator is the average per capita income in this Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures; or

(B) the disclosed amount, in the case of a named insured who, prior to the accident resulting in injury, voluntarily discloses his actual monthly earnings to his obligor and agrees in writing with such obligor that such sum shall measure work loss; and

(2) up to a total amount of fifteen thousand dollars ($15,000).

\* \* \* \* \* \*

(d) Survivors losses.—Survivors loss, as defined in section 103 shall be provided in an amount not to exceed five thousand dollars ($5,000)."

40 P.S. § 1009.202(b) & (d).

*Work Loss* is defined by Section 103 of the No-fault Act as follows:

" 'Work loss' means:

(A) Loss of gross income of a victim as calculated pursuant to the provisions of Section 205 of this Act; [4] and

(B) Reasonable expenses of a victim for hiring a substitute to perform self-employment services, thereby mitigating loss of income, or for hiring special help, thereby enabling a victim to work and mitigate loss of income." 40 P.S. § 1009.103.

As for *Survivors losses,* the relevant definitions in regard thereto are:

" 'Survivor' means:

(A) spouse; or

(B) child, parent, brother, sister or relative dependent upon the deceased for support.

'Survivor loss' means that:

(A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivors, if such victim had not sustained the fatal injury; and

(B) expenses reasonably incurred by a survivor or survivors, after a victim's death resulting from injury, in obtaining ordinary and necessary services in lieu of those which the victim would have performed, not for income, but for their benefit, if he had not sustained the fatal injury, reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the victim's death resulting from injury."

40 P.S. § 1009.103.

The most recent pronouncements in this Commonwealth on the scope of the preceding terms appeared in this Court's opinion in *Heffner v. Allstate Insurance Co.,* 265 Pa.Super. 181, 401 A.2d 1160 (1979), which was affirmed by our Supreme Court in a consolidated appeal *sub nom., Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980).

---

4. Under Section 205 [40 P.S. § 1009.205] a victim's "work loss" benefits are calculated in regard to the occurrence of the *injury,* which has been interpreted to encompass death. *See* note 7, *infra.*

We note also, at the outset, that this Court held in *Freeze v. Donegal Mutual Insurance Co., supra,* 301 Pa.Super. at 354, 447 A.2d at 1004, that "the estate of a deceased victim is entitled to recover work loss benefits under the No-fault Act." (Footnote omitted) Such pronouncement would seem to dispose of the insured's "dependency" argument instantly. Nonetheless, we take this occasion to elaborate upon, and hopefully clarify somewhat, the rationale for one's entitlement to "work loss" benefits under the No-fault Act.

We start off our discussion with an examination of *Heffner v. Allstate Insurance Co., supra.* Therein, Delores Heffner's husband was fatally injured when the vehicle he was driving struck a utility pole. Mrs. Heffner filed a claim with decedent's insurer, Allstate, to recover funeral expenses, survivor's loss benefits and "work loss" benefits. A complaint in assumpsit was filed by Mrs. Heffner to secure the "work loss" benefits. The lower court granted Allstate a judgment on the pleadings, Mrs. Heffner appealed the order and we reversed, holding that Mrs. Heffner was entitled to recover "work loss" benefits as the survivor of a deceased victim.

It can be argued that *Heffner v. Allstate Insurance Co., supra,* is not dispositive of whether a decedent's estate needs to establish "dependency" as a condition precedent to recovery of "work loss" benefits, since in *Heffner* the claimant was the decedent's spouse, who, under the No-fault Act, is "not required to present any evidence of dependency in order to qualify as a survivor[,]" entitled to basic loss benefits.[5] *Wercoch v. Liberty Mutual Insurance Co.,* 287 Pa.Super. 45, 51, 429 A.2d 712, 715 (1981). In *Pontius v. United States Fidelity and Guaranty Co.,* the case consolidated with *Heffner* to the Supreme Court, the administrator of the decedent's estate was seeking to recover "work loss" benefits. However, the administrator (Homer S. Pontius)

---

5. In *Daniels v. State Farm Mutual Automobile Insurance Co.,* 283 Pa.Super. 336, 423 A.2d 1284 (1980), this Court held that "for purposes of determining eligibility for survivor's loss benefits under the No Fault Act, a minor child is as a matter of law dependent upon a deceased parent." *Id.,* 283 Pa.Super. at 341, 423 A.2d at 1287.

was also the decedent's spouse and qualified as a "survivor" under the No-fault Act. Despite the factual distinctions appearing in the cases consolidated for review in *Heffner* with the case at bar, we, nonetheless, find *Heffner* to be instructive in that the Court, in making its findings in regard to a survivor's entitlement to "work loss" benefits, "did not redefine survivor's loss; [instead, the Court] simply analyzed the distinctions between work loss and survivor's loss, *noting that in the case of a deceased victim the work loss claim is comparable to a survival action* and the survivor's loss claim is comparable to a wrongful death action. So viewed, work loss benefits are a separate type of benefit[.]" (Emphasis added) *Daniels v. State Farm Mutual Automobile Insurance Co.,* 283 Pa.Super. 336, 343, 423 A.2d 1284, 1288 (1980), citing *Heffner v. Allstate Insurance Co., supra,* 265 Pa.Super. at 189–191, 401 A.2d at 1164–1165. In particular, President Judge CERCONE, speaking for the Court in *Heffner,* held:

"*In Pennsylvania damages recoverable in survival actions* include medical bills, the victim's conscious pain and suffering, and his probable lifetime earnings, less his probable lifetime costs of maintenance, discounted to their present value. *Skoda v. West Penn Power Co.,* 411 Pa. 323, 191 A.2d 822 (1963); *Murray v. Philadelphia Transp. Co.,* 359 Pa. 69, 74, 58 A.2d 323 (1948). The proceeds of the action *belong to the victim's estate and are disbursed to his heirs. Frazier v. Oil Chemical Co.,* 407 Pa. 78, 179 A.2d 202 (1962); *Martin v. Swift,* 258 F.2d 797 (3d Cir. 1958). *In a wrongful death action* the damages include the present value of the services the victim would have rendered to his family had he lived, as well as his funeral expenses. *Swartz v. Smokowitz,* 400 Pa. 109, 161 A.2d 330 (1960); *Gaydos v. Domabyl,* 301 Pa. 523, 533–34, 152 A. 549 (1930). *The persons entitled to recover such damages do not include the victim's estate generally, but the 'husband, widow, children, or parents of the deceased, and no other relatives.'* " (Footnote omitted) (Emphasis added) *Heffner v. Allstate Insurance Co., supra,* 265 Pa.Super. at

189, 401 A.2d at 1164; *see also Allstate Insurance Co. v. Heffner, supra,* 491 Pa. at 457–459, 421 A.2d at 635–636. In other words, in a "survival action" the damages "are measured by the pecuniary loss *to decedent* and therefore accrue to *his* estate. Whatever is recovered *forms part of deceased's estate.*" (Emphasis in original) *Pantazis v. Fidelity & Deposit Co. of Maryland,* 369 Pa. 221, 225, 85 A.2d 421, 423 (1952); *accord McClinton v. White,* 285 Pa.Super. 271, 276, 427 A.2d 218, 221 (1981). In contrast, the damages sought in a "wrongful death action" are "for the benefit of enumerated relatives, measured by the pecuniary loss occasioned to *them* [.]" *Pantazis v. Fidelity & Deposit Co. of Maryland, supra,* 369 Pa. at 224, 85 A.2d at 423; *McClinton v. White, supra,* 285 Pa.Super. at 276, 427 A.2d at 221. Consequently, if one concedes that "survival actions" and "wrongful death actions" can be analogized to the No-fault Act in an effort to ascertain its scope and meaning, *see Daniels v. State Farm Mutual Automobile Insurance Co., supra,* then the appellant's theory that the lower court looked to the wrong persons in determining if "work loss" benefits were to be paid is valid. That is, the lower court looked to the beneficiaries, (e.g., the appellant-administrator, who was neither the spouse nor a dependent relative of the deceased victims,) when it should have looked to the victims' losses, since such were the losses which "work loss" benefits were calculated to compensate. (Appellant's Brief at 20) Such position is not at odds with a recent treatise that thoroughly examined Pennsylvania's No-fault Act, in which the author observed:

"In the case of work loss . . . the [No-fault] Act is simply providing a certain measure of Survival Act damage, on a no-fault basis. . . . Similarly, with respect to so much of survivor's loss recovery as represents contributions to survivors, this is simply no-fault wrongful death recovery.

*       *       *       *       *       *

If, for example, a decedent has an earnings loss net of cost of maintenance of $100,000.00 over the balance of his work-life expectancy, $15,000.00 will be recoverable as

'work-loss' and $5,000.00 will be recoverable as 'survivor's loss.' The $80,000.00 balance of economic loss must be sought in a tort action." D. Shrager, ed., The Pennsylvania No-Fault Motor Vehicle Insurance Act, 112 (1979).

Under the lower court's view, albeit the administrator of the decedents' estates is precluded from recovering "work loss" benefits since he is neither a spouse nor a relative "dependent" upon the decedents for support, it "perceive[s] that the work loss of [appellant's] decedents here is an item of damages for which a residual tort remedy is preserved under Section 301 [40 P.S. § 1009.301(a)(4) ] of the No-Fault Act." (Lower Court Opinion at 6) We disagree. Upon a close reading of the No-fault Act, we find that, for example, the hypothetical cited in Shrager's treatise regarding the commencement of "a tort action" to recoup the balance of economic loss not secured pursuant to the No-fault Act is foreclosed under the lower court's theory of the case. Such position is buttressed by this Court's response to contentions by the insurer in *Heffner* that to permit the survivor of a deceased victim to receive *all* basic loss benefits would result in double coverage and would provide benefits in excess of the economic losses which survivors of deceased victims actually sustained as a result of an accident; *to-wit:*

"Comparing the scheme for retaining the tort liability system under Section 301 of the No-Fault Motor Vehicle Insurance Act with damages traditionally recoverable in wrongful death and survival actions, a serious difficulty arises under Allstate's interpretation of the Act—it abolishes the right of a deceased victim's estate to recover from a tortfeasor the earnings the deceased victim would have contributed to his estate had he survived. This is so because Section 301 only retains traditional tort liability against third persons for lost earnings to the extent that they exceed the monetary limits established by Section 202(b) of the Act, i.e., work loss benefits up to $1,000 per month and $15,000 total. Therefore, in order to recover damages for lost earnings in a survival action against a tortfeasor, the decedent's estate must prove that the dam-

ages have exceeded the *limits* of its coverage under Section 202(b). Under Allstate's analysis no decedent's estate could ever prove this fact because the estate would never qualify for work loss benefits in the first place. The limits are never reached ·because the coverage is not afforded in any amount to survivors of deceased victims. Ergo, the net result is that the estate of a deceased victim can never recover monetary damages for lost earnings in a survival action." (Footnotes omitted) (Emphasis in original) *Heffner v. Allstate Insurance Co., supra,* 265 Pa.Super. at 190–191, 401 A.2d at 1164–1165.

Instantly, as with the insurer's position in *Heffner,* under the lower court's analysis no decedent's estate could ever prove that the damages sustained by the estate exceeded the monetary limits of its coverage under Section 202(b), because the estate, unless it initially established "dependency" on the decedent, would never qualify for "work loss" benefits in the first place. The limits are never reached because the coverage is not afforded in any amount to estates (where, according to the lower court, "the heirs under the estate do not include 'survivors'—spouses or financially dependent relatives[ ]") of deceased victims. "Ergo, the net result is that the estate of a deceased victim can never recover monetary damages for lost earnings in a survival action." *Id.,* 265 Pa.Superior Ct. at 191, 401 A.2d at 1165. We find that such result does not comport with the intended loss "work loss" benefits were designed to compensate, i.e., the economic detriment the *victim sustained* as a consequence of his or her injuries. Certainly, it cannot be gainsaid that deceased victims do suffer economic detriment. This recognition has long been a part of our tort law, which affords the decedent's estate the opportunity to recover for the decedent's loss of earnings. *See, e.g., Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659 (1942); *McClinton v. White, supra; Funk v. Buckley & Co.,* 158 Pa.Super. 586, 45 A.2d 918 (1946).

Furthermore, we determine that if the Legislature had intended that "work loss" benefits be recoverable by a decedent's estate only after the establishment of "dependency," it would have so stated. *See* D. Shrager, The Pennsylvania No-Fault Motor Vehicle Insurance Act, 109 & 110. Additionally, since insurance statutes are not among those types of statutes designated by our Legislature as requiring strict construction, we are to construe them liberally in order to effect their purpose. *Mattia v. Employers Mutual Companies,* 294 Pa.Super. 577, 440 A.2d 616 (1982). In assiduously reviewing the No-fault Act, this Court finds no requirement of proving "dependency" in order to recover "work loss". In fact, in defining "work loss," the No-fault Act nowhere mentions survivor or survivors; thus, no showing of "dependency" is necessary.[6] *See Heffner v. Allstate Insurance Co., supra,* 265 Pa.Super. at 187, 401 A.2d at 1162–1163 ("Historically, the courts of this Commonwealth have routinely . . . found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured." (Quoted with approval in *Allstate Insurance Co. v. Heffner, supra,* 491 Pa. at 455, 421 A.2d 633)). Moreover, appellant-Roger Miller does not request the Court to award the "work loss" benefits to him as a survivor. Rather, Mr. Miller, in his capacity as duly appointed administrator, seeks to secure such benefits on behalf of his parents' estates. Surely, such estate has suf-

**6.** We note that a different result is not mandated by *Midboe v. State Farm Mutual Automobile Insurance Co.,* 495 Pa. 348, 433 A.2d 1342 (1981) (plurality) (O'BRIEN, C. J., filed an Opinion in Support of Affirmance in which ROBERTS and FLAHERTY, JJ., joined; NIX, J., filed an Opinion in Support of Reversal; LARSEN, J., filed an Opinion in Support of Reversal in which KAUFFMAN, J., joined). There, the Court held that the appellant-mother of a deceased minor child was required to prove dependency on the deceased to recover basic loss benefits under the No-fault Act. Since the case dealt specifically with the appellant's right to *"survivor's loss"* benefits under her No-Fault insurance policy, we find that it does not control the case *sub judice.*

fered a "loss" as that term is defined in the No-fault Act.[7] 40 P.S. § 1009.103. Consequently, in conclusion, we hold that the decedents' estates are entitled to recover "work loss" benefits of the deceased victims[8] under the No-fault

**7.** Section 103 of the No-fault Act defines "Loss," in pertinent part, as the "accrued economic detriment resulting from injury . . . consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss." Since injury means death, as well as non-fatal injury, Section 103 can be read to mean that work loss is an accrued economic detriment resulting from death. *Heffner v. Allstate Insurance Co., supra,* 265 Pa.Super. at 188, 401 A.2d at 1163.

**8.** The lower courts which have espoused the position that the Legislature intended to prohibit the estate of a decedent from recovering for his future loss of earnings under Section 202 [40 P.S. § 1009.202] have done so, principally, on the basis that the Legislature used the word "victim" without also adding "deceased victim" in defining earnings loss. In response to such contention, we note Shrager's remarks in his work on Pennsylvania's No-fault Act:

"Certainly, if the legislature intended to cause such a fundamental erosion in the recovery of economic damages, it could have done so in a more definitive fashion. A further analysis of the applicable sections of the [No-fault] Act is useful.

'Work loss' is defined in Section 103 as the following:

(A) loss of gross income of a *victim,* as calculated pursuant to the provisions of section 205 of the act . . .

The same section defines 'victim' as follows

*'Victim'* means an individual who suffers injury arising out of the maintenance or use of a motor vehicle; *'deceased victim'* means a *victim* suffering death resulting from injury.

Section 103 defines 'injury' as:

. . . accidentally sustained bodily harm to an individual and that individual's illness, disease, *or death* resulting therefrom.

It may be urged that the legislature intended that 'deceased victim' would merely be a sub-class of 'victim' according to the definitions of the [No-fault] Act and not a separate species of claimants to be treated differently. The legislature specified that 'deceased victim means a victim,' while it states that 'victim' means an 'individual.' Surely, if the legislature had intended to separate 'victim' and 'deceased victim,' it would have placed 'deceased victim' in its own category in the definitional section (Section 103) in alphabetical order and then it could readily have stated 'a deceased victim is an *individual.'*

Even in the definition of 'survivor's loss,' the legislature treats a deceased victim merely as another category of victim. In fact, the terms are used almost interchangeably in Section 103.

' "Survivor's loss" means the:

(A) loss of income of a *deceased victim* which would probably have been contributed to a survivor or survivors, if such *victim* had not sustained the fatal injury; and

Act, without first having to establish "dependency" upon the deceased victims as a *sine qua non* to recovery.

The order of the lower court is reversed and the case is remanded for further proceedings to compute the amount of damages to which appellant is entitled.

(B) expenses reasonably incurred by a survivor or survivors, after a *victim's* death resulting from injury, in obtaining ordinary and necessary services in lieu of those which the *victim* would have performed, not for income, but for their benefit, if he had not sustained the fatal injury, reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the *victim's* death from injury.'

Yet other sections of the No-fault Act, including Sections 110(b), 110(c) and 111(a) [40 P.S. §§ 1009.110(b), 1009.110(c) and 1009.-111(a)], use the terms 'victim' and 'deceased victim' interchange-ably." (Emphasis in original) Shrager, David S., The Pennsylvania No-Fault Motor Vehicle Insurance Act, 109–110 (1979).

Along with D. Shrager, our own Supreme Court in *Allstate Insurance Co. v. Heffner, supra,* 491 Pa. at 453–457, 421 A.2d at 633–635, has also rejected the "victim-deceased victim" dichotomy.