467 A.2d 345

John ANTANOVICH and Nellie Antanovich,
Co-Administrators of the Estate of Gary
Lee Antanovich, Deceased, Appellants,

v.

ALLSTATE INSURANCE COMPANY.

Cynthia BRENDLINGER, Individually and as the Administratrix of the Estate of Kenneth Brendlinger, and as natural guardian of Traci Brendlinger, Jodie Brendlinger, and Lonnie Brendlinger, and Traci Brendlinger, Jodi Brendlinger, and Lonnie Brendlinger, Individually,

v.

ALLSTATE INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued March 28, 1983.

Filed Oct. 14, 1983.

Petition for Allowance of Appeal Granted Feb. 10, 1984.

Anthony J. Seneca, Washington, for Antanovich, appellants (at No. 1230).

Richard C. Angino, Harrisburg, for Antanovich, appellants (at No. 1230) and for Brendlinger, appellees (at No. 450).

William T. Barker, Chicago, Ill., for Allstate, appellant (at No. 450) and appellee (at No. 1230).

Before CERCONE, President Judge, and SPAETH, BROSKY, ROWLEY, McEWEN, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

■ This case arises on two appeals, which we ordered consolidated because they both present the question whether the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, No. 40 P.S. 1009.101 *et seq.*, requires that the basic loss benefits provided by Section 202 of the Act, 40 P.S. § 1009.202, are to be multiplied by the number of vehicles as to which security has been provided under an insurance policy entitling the victim to benefits. Stated differently, we are to decide whether basic loss benefits may be "stacked." The Courts of Common Pleas have divided on this question,[1] and it is one of first impression in this court. In Part 1 of this opinion we hold that basic loss benefits may not be stacked.

■ One of these appeals, *Antanovich*, presents a second question: whether post-mortem work-loss benefits are to be paid to the survivors of the victim at a monthly rate or in a lump sum. In Part 2 of this opinion we hold that post-mortem work-loss benefits are to be paid in a lump sum.

1.

Under the No-fault Act, "basic loss benefits" include several different items of loss. As to some of these items, the Act places no limits on the amount that may be recovered. As to others, the Act does place limits. The items without limits are the expense of medical treatment and

1. In addition to *Antanovich v. Allstate Insurance Company*, No. 299 June Term 1981 (Washington County 1982), which is one of the two appeals before us, *Pontius v. United States Fidelity and Guaranty Company*, 102 Dauphin 432 (1981), has held that basic loss benefits may not be stacked. *See also Kirsch v. Nationwide Insurance Company*, 532 F.Supp. 766 (W.D.Pa.1982).

In addition to *Brendlinger v. Allstate Insurance Company*, No. 8420 Westmoreland County 1981, which is the other appeal before us, the following cases have held that basic loss benefits may be stacked: *Lias v. Erie Insurance Group*, No. 1612 Armstrong County 1981 (opinion sur exceptions 5/25/83); *Isenberg v. Nationwide Mutual Insurance Company*, 131 Pittsburgh L.J. 114 (1983); *O'Bryan v. United States Fidelity and Guaranty Company* No. 80–S–3732 (York County 1982); *Heinsey v. Nationwide Insurance Company*, 74 Berks L.J. 87 (1981); *Wilson v. Keystone Insurance Company*, 7 Phila. 274 (1981).

care, the expense of emergency health services, and the expense of medical and vocational rehabilitation services. The items with limits are: funeral expenses—$1,500; work loss benefits—$15,000; replacement services losses—$25 per day for an aggregate period of one year; and survivors' losses—$5,000. 40 P.S. §§ 1009.103, 1009.202.

In both *Antanovich* and *Brendlinger* the victim died as a result of injuries sustained in an automobile accident. In both cases the insurance policy was issued by Allstate Insurance Company, and in both cases more than one vehicle was covered under the policy.

In *Antanovich*, the policy covered four vehicles. The victim's parents, as administrators of his estate, sued to recover work loss benefits in the amount of $60,000, on the theory that the benefits may be stacked (*i.e.*, 4 × $15,000). They also sought to have the benefits paid to them in a lump sum, rather than at a monthly rate. On Allstate's motion for summary judgment, the Court of Common Pleas of Washington County held that work loss benefits may not be stacked, and should be paid at a monthly rate.

In *Brendlinger*, the policy covered two vehicles. The surviving spouse and children of the victim, suing on the theory that benefits may be stacked, sought to recover $30,000 work loss benefits (2 × $15,000), $10,000 survivors' loss benefits (2 × $5,000) and $2,117 funeral expenses (2 × $1,500 except not to exceed actual funeral expense). Allstate had made a total lump-sum payment to cover work loss in the amount of $13,903,[2] and had paid $5,000 survivors' loss benefits and $1,500 funeral expenses. On the Brendlingers' motion for summary judgment, the Court of Common Pleas of Westmoreland County held that the benefits may be stacked, and ordered Allstate to pay, in addition to the sums it had already paid, work loss benefits up to $15,000, to be paid at a monthly rate, survivors' benefits of $5,000, and funeral expenses of $617.

2. The Brendlingers elected to have work loss benefits paid in a lump sum settlement, and were therefore paid the present worth of $15,000. Brief for Allstate at 5 n. 3.

–a–

We may start our discussion by noting the terms of the Allstate policy, for in that way we may see just what is the issue we must decide.

In specifying "limits of liability," the Allstate policy provides:

Regardless of the number of ... INSURED MOTOR VEHICLES to which this coverage [*i.e.*, No-fault coverage] applies, Allstate's liability for personal injury protection benefits with respect to BODILY INJURY to any one ELIGIBLE PERSON in any one MOTOR VEHICLE accident is limited as follows: (1) the maximum amount payable for WORK LOSS shall not exceed $15,000 ... (3) The maximum amount payable for FUNERAL EXPENSES shall not exceed $1,500; (4) The maximum amount payable for SURVIVOR'S LOSS shall not exceed $5,000.

The Antanovichs and Brendlingers do not argue that the Allstate policy is ambiguous, or that Allstate in some way misled them. *Cf. Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979); *Habecker v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 445 A.2d 1222 (1982); *Adelman v. State Farm Mutual Automobile Insurance Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978); *Barth v. State Farm Fire & Casualty Co.*, 214 Pa.Super. 434, 257 A.2d 671 (1979). Instead, they admit, as they must, that the policy clearly prohibits stacking. They argue, however, that this prohibition should be declared invalid as contrary to the No-fault Act. They acknowledge their inability to point to any provision of the Act explicitly providing that a policy may not prohibit stacking. Moreover, it is evident that the Insurance Commissioner is of the view that a policy that prohibits stacking is not contrary to the Act, for the Commissioner has approved the Allstate policy. *See* 31 Pa.Code § 66.101. However, even though the Commissioner has expert knowledge, to which a court must defer, *Feingold v. Bell of Pennsylvania*, 477 Pa. 1,

383 A.2d 791 (1977), he has on occasion issued invalid regulations, *United Services Auto Ass'n Appeal*, 227 Pa. Super. 508, 323 A.2d 737 (1974), and the position of the Antanovichs and Brendlingers is that here he has issued invalid regulations. While no provision of the No-fault Act explicitly provides that a policy may *not* prohibit stacking, neither does any provision explicitly provide that a policy *may* prohibit stacking. This being so, the Antanovichs and Brendlingers argue, we must consider the public policy underlying the Act. In their view, a proper understanding of that public policy leads to the conclusion that an insurance policy such as Allstate's may not prohibit stacking.

Allstate generally agrees with this definition of the issue, but in its view, a proper understanding of the public policy underlying the No-fault Act leads to the conclusion that stacking *is* prohibited by the Act, and that therefore its insurance policy is valid.

–b–

As with other remedial legislation, like workmen's compensation provisions, *see Bley v. Commonwealth Department of Labor and Industry*, 484 Pa. 365, 399 A.2d 119 (1979), *Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 348 A.2d 746 (1975), we are to construe insurance statutes liberally in order to effect their purposes. 1 Pa.C.S.A. § 1928(c); *Miller v. U.S. Fidelity and Guaranty Company*, 304 Pa.Super. 43, 450 A.2d 91 (1982); *Chesler v. Government Employees Insurance Company*, 302 Pa.Super. 356, 448 A.2d 1080 (1982); *Dull v. Employers Mutual Casualty Co.*, 278 Pa.Super. 569, 420 A.2d 688 (1980). However, we are not free to create additional authority in a statute when its terms are unambiguous. *In re Private Detective License of Keibler Detective Agency, Inc.*, 279 Pa.Super. 276, 420 A.2d 1331 (1980). "The court's function is to interpret legislative enactments and not promulgate them." *Mayhugh v. Coon*, 460 Pa. 128, 331 A.2d 452 (1975).

When the words of a statute are not explicit—no provision of the No-fault Act either explicitly requiring or explic-

itly prohibiting stacking basic loss benefits—we proceed as follows:

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c).

Here, the occasion and necessity for the No-fault Act, the circumstances under which it was enacted, the mischief to be remedied, and the object to be attained are readily ascertained, for they are all set forth in the comprehensive statement of "Findings and Purposes" with which the Act opens. 40 P.S. § 1009.102.[3]

3. The No-fault Act is based upon S. 354, 93d Cong., 2d Sess. (1974), the proposed National No-Fault Motor Vehicle Insurance Act. The statement of legislative findings and purposes contained in the Pennsylvania Act is taken from the National Act. Our review of the no-fault statutes of twelve other states discloses that they contain either no statement of purposes, e.g., Ct.Gen.Stat.Ann. § 38–319 et seq. (West Cum.Supp.1983–1984); Ga.Code Ann. § 33–34–1 et seq. (1982); Hawaii Rev.Stat. § 294–2 et seq. (Supp.1982); Mass.Gen.Laws Ann. c. 90, § 34A et seq. (West 1969 & Supp.1983–1984); N.J.Stat.Ann. 36:6A–1 et seq. (Supp.1982–1983), or a very brief one, e.g., Colo.Rev.Stat. § 10–4–703 (1973); Fla.Stat.Ann. § 627.731 (West Supp.1983); Kan. Stat.Ann. § 40–3102 (1981); Ky.Rev.Stat. § 304.39–010 et seq. (1981); N.D.Cent.Code § 26–41–01 et seq. (1978 & Supp.1981); S. Carolina Code Ann. § 56–11–10 et seq. (Law.Co-op.1976 & Supp.1982); Utah Code Ann. § 31–41–1 et seq. (1973 & Supp.1981).

Counsel for the Brendlingers direct us to numerous authorities in the no-fault insurance field to support the argument that the No-fault Act requires stacking. E.g., Keeton & O'Connell, Basic Protection for the Accident Victim (1962); Franklin, Chanin & Mark, Accidents, Money and the Law: A Study of the Economics of Personal Injury

Several of the General Assembly's findings are particularly relevant for our purposes; they may be summarized as follows: First, it is "essential" to provide "maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents." 40 P.S. § 1009.-102(a)(3). Second, the traditional system of making compensation and restoration of victims and survivors contingent upon proof of fault and the existence of sufficient liability insurance is not a "low cost, comprehensive, and fair system," whereas a system that "assures every victim payment of all his basic medical and rehabilitative costs, and recovery of a reasonable amount of work loss, replacement services and survivor's loss," and that "eliminates the need to determine fault except when a victim is very seriously injured" is such a system, *id.* § 1009.102(a)(5), (6), which it is "necessary and proper" to adopt, *id.* § 1009.-102(a)(4). Third, "throughout the Commonwealth there should be uniformity as to the essential elements of the system of motor vehicle accident and insurance law to avoid confusion, complexity, uncertainty, and chaos which would be engendered by a multiplicity of noncomplementary systems, . . ." *Id.* § 1009.102(a)(8). Finally, "[i]t is necessary to afford required coverages for motor vehicles to economically disadvantaged individuals at rates not so great as to deny such individuals access to insurance which it is necessary for them to have in order to earn income and to be or remain gainfully employed." *Id.* § 1009.102(a)(10).

Having made these findings, the General Assembly then set forth the purposes of the No-fault Act:

Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the

Litigation, 61 Colum.L.Rev. 1 (1961); Hart, National No-Fault Auto Insurance: The People Need it Now, 21 Cath.U.L.Rev. (1971); Rosenberg & Sovern, Delay and the Dynamics of Personal Injury Litigation, 59 Colum.L.Rev. 1115 (1959). While we find these sources instructive on the circumstances surrounding the enactment of no-fault legislation generally, they are not especially helpful in ascertaining the intention of the Pennsylvania General Assembly in enacting the No-fault Act.

purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims. *Id.* § 1009.102(b).

It is now in order to consider the substantive provisions of the No-fault Act, so that we may see how the General Assembly sought to accomplish its purposes.

The owner of each vehicle registered in Pennsylvania is required to provide security (either by insurance or otherwise) for the payment of basic loss benefits. 40 P.S. § 1009.104. If an accident resulting in injury occurs, the victim or the survivor of a deceased victim "is entitled to receive basic loss benefits in accordance with the provisions of this act." *Id.* § 1009.201(a). The "obligor providing security for the payment of basic loss benefits" is required to pay such benefits "without regard to fault to each individual entitled thereto, pursuant to the terms and conditions of this act." *Id.* § 1009.111(b).

We have already briefly indicated, at the beginning of this part of our opinion, what are the several different items included within "basic loss benefits." To state them more fully, they are as provided in Sections 202 and 103 of the Act:

### § 1009.202 Basic loss benefits

(a) **Allowable expense limits.**—Allowable expense, as defined in section 103 of this act [1] shall be provided or the equivalent in the form of a contract to provide for services required.

(b) **Work loss limits.**—Work loss, as defined in section 103 shall be provided:

(1) up to a monthly maximum of:

(A) one thousand dollars ($1,000) multiplied by a fraction whose numerator is the average per capita income in this Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures; or

(B) the disclosed amount, in the case of a named insured who, prior to the accident resulting in injury, voluntarily discloses his actual monthly earnings to his obligor and agrees in writing with such obligor that such sum shall measure work loss; and

(2) up to a total amount of fifteen thousand dollars ($15,000).

**(c) Replacement services losses.**—Replacement services loss, as defined in section 103 shall be provided up to a daily maximum of twenty-five dollars ($25) for an aggregate period of one year.

**(d) Survivors losses.**—Survivors loss, as defined in section 103 shall be provided in an amount not to exceed five thousand dollars ($5,000).

40 P.S. § 1009.202(a)–(d).

The term "allowable expense" used in Section 202(a) is defined in Section 103 as follows:

"Allowable expense" means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for:

(A) professional medical treatment and care;

(B) emergency health services;

(C) medical and vocational rehabilitation services;

(D) expenses directly related to the funeral, burial, cremation, or other form of disposition of the remains of a deceased victim, not to exceed one thousand five hundred dollars ($1,500); and

The term does not include that portion of a charge for a room in a hospital, clinic, convalescent, or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge for semiprivate accommodations, unless more intensive care is medically required; or any amount includable in work loss, replacement services loss, or survivor's loss.

As one considers these sections, one's immediate and clear, albeit preliminary, impression is that stacking basic loss benefits is prohibited. The event giving rise to the accident victim's right to receive basic loss benefits is the accident. Nothing in any of the sections suggests that the amount of these benefits should vary with—be contingent upon—the number of vehicles for which security has been provided. To the contrary: to make basic loss benefits thus contingent seems inconsistent with the sections, especially when they are read in the light of the General Assembly's statement of its findings and purposes.

Having found it "necessary" to adopt a "low-cost, comprehensive, and fair system" of restoration and compensation for victims of motor vehicle accidents, the General Assembly explained exactly the *sort* of system it considered to be "low-cost, comprehensive, and fair." It is a system that, among other things, "assures every victim payment of *all* his basic medical and rehabilitation costs, and recovery of a *reasonable amount* of work loss, replacement services and survivor's loss." 40 P.S. § 1009.102(a)(6) (emphasis added). Thus the General Assembly made plain its intention that with respect to *some* items of loss ("basic medical and rehabilitation costs") a limit on recovery should *not* be imposed ("payment of all" such losses should be assured), but that with respect to *other* items of loss ("work loss, replacement services and survivor's loss") limits on recovery *should* be imposed ("recovery of a reasonable amount"). This intention is implemented by Sections 202 and 103: in providing basic loss benefits, no limits are imposed in recovery of basic medical and rehabilitative costs, but limits are imposed on recovery of work loss, replacement services and survivor's loss.[4]

4. The Antanovichs and Brendlingers direct us to *Wasche v. Milbank Mutual Insurance Company,* 268 N.W.2d 913 (Minn.1978), and *Travelers Insurance Company v. Lopez,* 93 Nev. 463, 567 P.2d 471 (Nev.1977), cases that have permitted stacking of benefits analogous to basic loss benefits when the injured person or his survivor claims medical expense benefits under more than one policy of insurance. We are not persuaded by these cases. While the *Wasche* court relied on cases allowing stacking of uninsured motorist benefits, and the *Lopez* court

This distinction between unlimited and limited recovery is at least some indication that basic loss benefits should not be stacked. For stacking is a way to avoid a specified limit. But if recovery is unlimited, there is no need to stack. However, there is another feature of Section 202, which clearly manifests an intention that basic loss benefits may not be stacked.

In providing in Section 102(a)(6) that recovery of work loss, replacement services loss, and survivor's loss should be limited to "a reasonable amount," the General Assembly did not say what it meant by "reasonable." In Section 202, it did say: up to $15,000 for work loss, $25 per day for an aggregate period of one year for replacement services loss, and up to $5,000 for survivor's loss. This is simply another way of saying that to permit recovery of *more* than these amounts, which is what would happen if stacking were permitted, would be "*un*reasonable."

This initial impression that the General Assembly intended to prohibit stacking is strengthened as one continues to examine the No-fault Act. In ascertaining the General Assembly's intention, we are to consider "[t]he consequence of a particular interpretation." 1 Pa.C.S.A. § 1921(c)(6).

based its decision on public policy, we note that the Minnesota and Nevada No-fault acts limit the amount recoverable for medical expenses under one policy. The Antanovichs and Brendlingers do not seek to stack medical expense benefits since these may be recovered to the extent of the loss under the Pennsylvania No-fault Act. It is also noteworthy that the Michigan and New Jersey No-fault acts, under which the courts have denied stacking, *O'Hannesian v. Detroit Automobile Inter-Insurance Exchange,* 110 Mich.App. 280, 312 N.W.2d 229 (1981); *Riccio v. New Jersey Manufacturers Insurance Company,* 179 N.J.Super. 65, 430 A.2d 641 (App.Div.1981), are like the Pennsylvania act in that they place no limits on the amount that may be recovered for medical expenses. Kansas and Georgia courts have also denied stacking, but the statutes in those states have explicit anti-stacking provisions. *Georgia Casualty & Surety Company v. Waters,* 146 Ga. App. 149, 246 S.E.2d 202 (1978); *McNemee v. Farmers Insurance Group,* 228 Kan. 211, 612 P.2d 645 (1980). *See* Ga.Code Ann. § 56–3403b (1982); Kan.Stat.Ann. § 40–3108(a) (1981). Though of some interest, these cases from other jurisdictions cannot of course be dispositive of the question of stacking under the Pennsylvania No-fault Act, for as noted, *see* note 3 *supra,* the Pennsylvania Act is unique in that it contains a comprehensive statement of purposes.

And the consequence of interpreting the No-fault Act as permitting stacking would be to defeat objectives that the General Assembly sought to achieve.

We have referred to the General Assembly's findings that a no-fault system should be "fair" and "uniform[ ] as to [its] essential elements." 40 P.S. § 1009.102(a)(6), (8). To permit stacking would render the system both unfair and nonuniform. Suppose two victims of automobile accidents, each having suffered a work loss of $60,000. Why should the victim who owns only one automobile be limited to recovering $15,000 work loss, while the other, who owns four automobiles, recover $60,000? Such a result would be an invidious discrimination, favoring the wealthy over those of modest means or less. If $15,000 is a reasonable recovery for the one individual, then it is for the other one, too.

To permit stacking of basic loss benefits would permit some victims to circumvent the system of compensation that the General Assembly has provided. The General Assembly recognized that in many cases losses would exceed the limits imposed by Section 202 of the No-fault Act. However, under the system of compensation that the General Assembly has provided, limits are not subject to being escaped by resort to stacking if by chance more than one vehicle was covered under the policy. Instead, the victims must recover losses in excess of the limits imposed by the No-fault Act by establishing fault. *See Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975); *Heffner v. Allstate Insurance Co.*, 265 Pa.Super. 181, 401 A.2d 1160 (1979), *aff'd*, 491 Pa. 447, 421 A.2d 629 (1980).

This two-tier, or divided, system of compensation—providing for recovery of limited amounts under a no-fault system of compensation, and amounts in excess of those limits by an action under the traditional tort system of compensation, in which fault must be proved—is of fundamental significance. In its findings explaining what it meant by "a low-cost, comprehensive, and fair" no-fault system, the General Assembly has stated that such a system is one that "eliminates the need to determine fault *except when a*

*victim is very seriously injured."* 40 P.S. § 1009.102(6)(B) (emphasis added). Moreover, in upholding the No-fault Act as constitutional, the Supreme Court emphasized that the Act "create[d] two classes of motor vehicle accident victims, each with different items of compensable damage:" one class of victims, who have been involved in relatively minor accidents, who must rely solely on no-fault recovery, and a second class, involved in serious accidents, who upon proof of fault in a tort action may recover general damages without limit, as the evidence may warrant. *Singer v. Sheppard, supra* 464 Pa. at 396–403, 346 A.2d at 901–05.

Thus, the General Assembly has said: "We are abolishing your right to sue in tort, within stated limits. If you want to recover damages outside those limits, you may, but to do so you must sue in tort, and prove fault." If we were to hold that basic loss benefits may be stacked, we should suppose that instead of this, the General Assembly had said: "We are abolishing your right to sue in tort, but *not* within stated limits. If there is only one vehicle on the policy, your right to sue is abolished up to $15,000, but if there are four vehicles on the policy, it is abolished up to $60,000." Were we to say this, however, we should rewrite the statute, and we may not do that. *See Mayhugh v. Coon, supra; In re Private Detective License of Keibler Detective Agency, Inc., supra.* Moreover, it is questionable whether such a variable abolition of the right to sue in tort could withstand constitutional challenge. For while the Court in *Singer v. Sheppard, supra,* did not consider whether the No-fault Act prohibited stacking, that issue not being presented, the Court did throughout its decision make plain its conception of the Act as creating two classes of litigants, defined by the limits imposed by the Act, not any number of classes, defined by the contingency of the number of motor vehicles on the insurance policy (a $15,000 class, if one vehicle; a $30,000, if two; and so on).

The conclusion that the General Assembly intended to prohibit stacking is still further supported by Sections 207 and 204 of the No-fault Act.

Section 207 provides that an obligor, such as Allstate, "shall offer ... added loss benefits ..., including ... loss excluded from basic loss benefits by limits on allowable expense, work loss, replacement services loss, and survivor's loss ...." 40 P.S. § 1009.207(a)(1). Thus, there must be the opportunity to purchase additional protection. But if the opportunity is not taken, the "limits on [the several items of loss included in basic loss benefits]" must be adhered to.

Section 204 establishes the source of basic loss benefits. For example, if the victim is insured, he must submit his claim to his own insurer; if uninsured, to the insurer of the vehicle in which he was riding when the accident occurred. 40 P.S. § 1009.204(a)(2), (3). Section 204(b) provides that if the victim is entitled to recover from more than one insurer, he may recover basic loss benefits from any one of them, and the one that pays the claim may then seek contribution from the other insurers:

> (b) Multiple sources of equal property.—If two or more obligations to pay basic loss benefits apply equally to an injury under the priorities set forth in subsection (a) of this section, the obligor against whom a claim is asserted first shall process and pay the claim as if wholly responsible. Such obligor is thereafter entitled to recover contribution pro rata from any other such obligor for the basic loss benefits paid and for the costs of processing the claim. If contribution is sought among obligors responsible under paragraph (4) of subsection (a) of this section, proration shall be based on the number of involved motor vehicles.

40 P.S. § 1009.204(b).

These provisions implicitly prohibit stacking, for to permit stacking would be inconsistent with the General Assembly's intention to ensure uniformity and fairness in the no-fault system. The trial court in *Antanovich* aptly illustrated the chaos that would result if stacking were permitted. Said the court:

> Stacking under No-Fault may create nightmares.

Assume an uninsured pedestrian who dies as a result of the collision of four automobiles. The source of basic loss benefits in this situation is Section 204(a)(4). Only one of these vehicles is the source of such benefits. Section 204(b) says:

"The obligor against whom a claim is asserted first shall process and pay the claim as if wholly responsible. If contribution is sought among obligors responsible under paragraph (4) of the subsection (a) of this section proration shall be based on the number of involved motor vehicles."

Assume in our example, that automobile A is one of four vehicles insured under the same policy, automobile B is one of two automobiles, C only one, and automobile D is uninsured.

What amount of work loss benefit is payable? If we stack the benefits, the answer would appear to depend against whom the claim is first asserted. If the spouse of the deceased victim asserts a claim first against automobile A's carrier, she is entitled to $60,000; but if a claim is first made against automobile C's carrier the amount is $15,000, (assuming stacking).

If the carrier for automobile A pays the $60,000, it is entitled to proration on the basis of the number of involved motor vehicles. What is the prorated share of the carrier for automobiles B and C?

*Antanovich v. Allstate Insurance Company,* No. 299 June Term 1981, slip op. at 6, n. 5 (Washington County 1982).

–c–

■■■■ In arguing that the No-fault Act requires stacking, the Antanovichs and Brendlingers rely heavily on the General Assembly's finding that *"the maximum feasible restoration* of all individuals injured and compensation of economic losses of the survivors of all individuals killed in motor vehicle accidents ... is essential to the humane and purposeful functioning of commerce[.]" 40 P.S. § 1009.-

102(a)(3) (emphasis added). But this argument lacks merit. "[M]aximum feasible restoration" cannot be read as meaning "feasible only by resort to a method of compensation *prohibited* by the Act." Rather, it must be read as meaning "feasible within the system of compensation *provided* by the Act." No phrase in a statute may be read in isolation; the statute must always be read as a whole. *Wilson v. Central Penn Industries, Inc.*, 306 Pa.Super. 146, 452 A.2d 257 (1982); *In Interest of Jones*, 286 Pa.Super. 574, 429 A.2d 671 (1981). Moreover, when specific provisions of the statute are in conflict with general provisions, the specific provisions prevail. *Appeal of Yerger*, 460 Pa. 537, 333 A.2d 902 (1975); *Toter v. Knight*, 278 Pa.Super. 547, 420 A.2d 676 (1980). Thus, "maximum feasible restoration" must be read in the light of, and subject to, the specific provisions of Section 102(a)(6)(A) of the Act, that a "low-cost, comprehensive, and fair" no-fault system is one that assures "recovery of a reasonable amount of work loss, replacement services and survivor's loss," and of Section 202, that these "reasonable amount[s]" are not to exceed, respectively, $15,000, $25 per day for an aggregate period of a year, and $5,000. In the General Assembly's view, $15,000 *is* the "maximum feasible restoration" of work loss, consistent with its purpose of providing a "low-cost, comprehensive, and fair" no-fault system.

The Antanovichs and Brendlingers also argue that they have paid for additional coverage and are therefore entitled to a greater no-fault recovery. Antanovich Brief at 24; Brendlinger Brief at 6. But this argument also lacks merit; indeed, it is disingenuous. For whatever additional premium was paid, because there was more than one vehicle on the policy, was *not* paid to enable the insured to stack basic loss benefits. As we have seen, the policy clearly prohibited stacking. What the Antanovichs' and Brendlingers' argument is, when accurately stated, is that the premium they paid should entitle them to stack *despite* the fact that when they paid it, they knew that the policy prohibited stacking. If they wanted additional coverage, beyond the limits on

basic loss benefits imposed by the No-fault Act, they had only to ask for it, and under the Act, Allstate would have been obliged to provide it. 40 P.S. § 1009.207(a)(1).[5]

Finally, the Antanovichs and Brendlingers argue that they should be allowed to stack basic loss benefits because uninsured motorist benefits may be stacked. If one, why not the other? In response to this argument, another court has said:

In support of its claim to cumulative benefits plaintiff draws an analogy to uninsured motorist coverage in which Pennsylvania courts have allowed stacking in cases where one policy covered two or more vehicles. *Marchese v. Aetna Casualty Insurance Co.*, 284 Pa.Super. 579, 426 A.2d 646 (1981); *Sones v. Aetna Casualty Insurance Co.*, 270 Pa.Super. 330, 411 A.2d 552 (1979). These cases have allowed stacking based upon public policy and legislative intent to provide protection to innocent victims from injuries caused by the negligence of irresponsible drivers. *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 395, 241 A.2d 112 (1968). Plaintiff alleges that the public policy behind the Uninsured Motorist Act is the same as that underlying the No-Fault Act. Therefore stacking of no-fault benefits should similarly be permitted.

This argument fails, however, because the analogy to the Uninsured Motorist Act is faulty. The Uninsured Motorist Act was enacted specifically to provide coverage to innocent victims of negligent acts of uninsured third parties. The Act was not intended to limit causes of action against tortfeasors, but to assure recovery where tortfeasors are financially unable to pay any judgment

5. We have not overlooked Allstate's argument that its premiums are calculated on the basis of the regulations of the Insurance Commissioner, with the expectation that its maximum liability for work loss benefits is $15,000. Allstate tells us that if stacking were required, insurance premiums paid by Pennsylvania insureds to all insurers would have increased $35 million in 1980. Antanovich Record 26a–27a. We have no way of appraising the accuracy of Allstate's statistics, and they have played no part in our decision.

awarded. The Act does not place any statutory maximum on the amount of coverage any individual insured can obtain, only the minimum amount of coverage each insurance policy must provide.

The No-Fault Act, on the other hand, has an entirely different purpose. The No-Fault Act provides for a specific amount of possible recovery to be awarded to victims of motor vehicle accidents, *regardless of fault.* This arrangement allows for prompt compensation to victims. However, once the statutory ceilings are exceeded, the negligent party is still liable for any further damages caused by his actions. The cause of action against the faulty driver is not limited at this point. Furthermore, the very fact that, unlike the Uninsured Motorist Act, the No-Fault Act does contain statutory ceilings in the amount of recovery indicates an intent to limit the amount of no-fault recovery under the statute. In the *Harleysville* case, the Pennsylvania Supreme Court, in their decision to allow stacking of uninsured motorist benefits stated:

> The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but *nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover. if he suffers a loss resulting from the negligence of an uninsured motorist.* (emphasis added) 429 Pa. at 395, 241 A.2d 112.

*Kirsch v. Nationwide Insurance Company,* 532 F.Supp. 766, 768 (W.D.Pa.1982).

This is excellently put, and we see no need to add to it.

-2-

The Antanovichs present the additional question whether work loss benefits are to be paid in a lump sum to the

victim's survivors when the victim has died as a result of injuries sustained in the accident.

Section 106(a) of the No-fault Act provides:

(a) In general.—

(1) No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss and replacement services loss or survivor's loss is sustained.

40 P.S. § 1009.106(a).

Allstate argues that work loss is "sustained" only when the victim would have received the income, had he lived. Some cases have suggested that such benefits should be paid monthly, as if the victim had lived. *E.g., Baker v. Aetna Casualty & Surety Company,* 309 Pa.Super. 81, 96, 454 A.2d 1092, 1100 (1981); *Wercoch v. Liberty Mutual Insurance Company,* 287 Pa.Super. 45, 52 n. 3, 429 A.2d 712, 715 n. 3 (1981). However, *Hartleb v. Ohio Casualty Insurance Co.,* 305 Pa.Super. 231, 235, 451 A.2d 506, 510 (1982), holds that work loss benefits should be paid in a lump sum.

We can think of only one reason for the requirement that work loss benefits are to be paid monthly, namely, that it is not known when, or whether, the victim will be able to return to work. But when an accident results in death, this reasoning is inapplicable. It *is* known that the victim will *not* return to work. The amount of work loss benefits is therefore certain, and there is no need to extend the payments up to a period of fifteen months. *See* 40 P.S. § 1009.202(b). We therefore hold that post-mortem work loss benefits are to be paid in a lump sum. To the extent they are contrary, *Baker* and *Wercoch* are disapproved.

Reversed and remanded for the entry of judgments consistent with this opinion.