## McKinney v. Lumbermen's Mutual Casualty Company

*Gregory H. Gettle,* for plaintiff.
*Peter D. Solymos,* for defendant.

MILLER, J., May 9, 1985 — This matter was begun by action in assumpsit to which an answer was filed. At the pretrial conference, the parties agreed that the issues were more legal than factual and that the case should be submitted to the court for determination upon briefs. We therefore treat the matter as one to be determined on a case stated.

Plaintiff and defendant in this matter seek a legal determination of whether to calculate plaintiff's work-loss benefits as provided for in the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq. repealed by The Motor Vehicle Financial Responsibility Law, Act of February 12, 1984, Act no. 1984-11, 75 Pa.C.S. §1701.1795, under the basis of a regularly employed person, a seasonally employed person or an unemployed person. The parties also seek a determination by the court as to whether an award of attorney's fees is appropriate.

Plaintiff was involved in an automobile collision on December 19, 1981, at which time she sustained personal injuries. At the time of the accident, plaintiff was not employed. Plaintiff's occupation is as a

barber. Plaintiff had been employed by The Barbers at the York Mall from November 1980 to June 1981, at which time she quit working to spend the summer with her children and step-children. Although plaintiff alleges that she intended to return to work, she had not done so at the time of the accident in December.

Plaintiff's work history is sketchy, at best. From November 1980 to June 1981, plaintiff was employed by The Barbers. Plaintiff worked five days a week, seven to 10 hours per day. Plaintiff's income from January 1981 to June 1981 was $3,905 gross wages. Prior to her employment with The Barbers, plaintiff was unemployed from 1970 to November 1980. Prior to that period of unemployment, plaintiff was employed at Aaron's Studio of Hair Design in Lancaster, Pa. from February 1974 to sometime in 1978. We have no information relating to the number of hours plaintiff worked at Aaron's or the amount of money plaintiff earned while working there.

In order to make our determination, it is necessary to examine section 205 of the No-fault Act which provides as follows:

"(a) Regularly employed.—The work loss of a victim whose income prior to the injury was realized in regular increments shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by 52; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period.

"(b) Seasonably employed.—The work loss of a victim whose income is realized in irregular increments shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by the number of weeks he normally works; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof the victim was unable to perform and would have performed work during the accrual period but for the injury.

"(c) Not employed.—The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his proable annual income by 52; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period.

"(d) Definitions.—As used in this section:

'Probable annual income' means, absent a showing that it is or would be some other amount, the following:

(A) 12 times the monthly gross income earned by the victim from work in the month preceding the month in which the accident resulting in injury occurs, or the average annual income earned by the victim from work during the years, not to exceed three, preceding the year in which the accident resulting in injury occurs, whichever is greater, for a victim regularly employed at the time of the accident;

(B) the average annual gross income earned by the victim from work during the years in which he was employed, not to exceed three, preceding the year in which the accident resulting in injury occurs, for a victim seasonally employed or not employed at the time of the accident; or

(C) the average annual gross income of a production or non-supervisory worker in the private

nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs, for a victim who has not previously earned income from work." 40 P.S. §1009.205.

Defendant contends that plaintiff's work-loss benefits should be calculated under subsection 205(a) for regularly employed persons or subsection 205(b) for seasonably employed persons. We fail to see in what manner plaintiff could be considered a regularly employed person. Plaintiff was not employed for the six-month period immediately prior to the accident. The duration of plaintiff's last employment was only six months. Although the term "regularly employed" is not defined within the act, we believe plaintiff's employment record precludes her from being classified in that manner. In our opinion, the term "regularly employed" refers to a person who has a regular income at the time the accident occurs.

We also fail to see how plaintiff's work history could be classified as seasonal employment. Seasonal work is work in which the duration of employment is affected by seasonal weather or a holiday period (e.g., construction work or sales work). Plaintiff's work is in no way affected by such factors.

We find that the appropriate classification for Plaintiff is "not employed." Subsection 205(c) specifically provides: "The work loss of a victim *who is not employed when the accident resulting in injury occurs* shall be calculated by . . ." (Emphasis added.) Plaintiff was not and had not been employed for six months prior to the accident.

The first step in calculating plaintiff's work loss is to determine plaintiff's "probable annual income." "Probable annual income" for a person who was not employed at the time of the accident is defined in

subsection 205(d)(B) to mean: "absent a showing that it is or would be some other amount, . . . the averge annual gross income earned by the victim from work during the years in which he was employed, not to exceed three, preceding the year in which the accident resulting in injury occurs . . ." Based upon this definition, plaintiff's probable annual income would be calculated by averaging her gross annual income from the years 1980, 1978 and 1977, which are the three years during which plaintiff was employed and which precede the year of the accident. See Dorsey v. Harleysville Mutual Insurance Co., 285 Pa. Super. 124, 426 A.2d 1173 (1981). (The court included three non-consecutive years during which plaintiff was employed in determining probable annual income.)

We are not equipped with the facts and figures necessary to make the determination of plaintiff's probable annual income. However, if plaintiff were to supply the court with the appropriate figures, the next step in the calculation would be to divide the probable annual income figure by 52 to arrive at a probable weekly income figure. The final step in the calculation would be to determine the number of work weeks that plaintiff would reasonably have been expected to realize income and multiply that number by the probable weekly income figure.

Plaintiff contends that her probable annual income should not be calculated utilizing the formula provided in subsection 205(d)(B) because facts exist which show "that it is or would be some other amount." Plaintiff contends that her work history from November 1980 to June 1981 is sufficient to establish her probable annual income. Plaintiff asserts that her average monthly income for that period was $781 and that her probable annual income should be $9,372 (12 x $781). We do not believe a

six-month work history, in and of itself, is a sufficient basis upon which to determine plaintiff's probable annual income.

"The Legislature's express purpose in adopting the No-fault Act was to create 'a low cost, comprehensive and fair system which would provide for maximum feasible restoration of all victims of motor vehicle accidents'. . . . Restoration includes assuring 'every victim . . . recovery of a reasonable amount of work loss'. " Mattia v. Employers Mutual Companies, 294 Pa. Super. 577, 582, 440 A.2d 616, 618 (1982).

We believe a fair and accurate determination of plaintiff's probable annual income falls somewhere between the figure which would result from the statutory formula and plaintiff's assertion of $9,372. We find that plaintiff's recent monthly gross income figure of $781 is not unreasonable. However, we conclude that her probable annual income should not be based on a 12-month work year. Plaintiff, on her own initiative, quit working to spend the summer months with her children and step-children. There is no indication that this would not have occurred again during the accrual period. While we cannot determine with certainty when plaintiff would have returned to work, we find it reasonable to expect that plaintiff's work year would consist of a nine-month work period, which would exclude the three-month summer period. Based upon this determination, plaintiff would be entitled to $13,896 for the period from December 1981 to September 1983, taking into consideration the exclusion of the two summer periods.

Plaintiff asserts that she is disabled at the present time. We have no indication as to when or to what degree plaintiff has returned or may return to work. Therefore, it is impossible to determine at this time

if any additional work-loss benefits are owed to plaintiff.

We have also been asked to determine whether plaintiff is entitled to attorney's fees. Section 107(3) of the act provides:

"If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended." 40 P.S. §1009.107(3).

Thus, the standard for awarding attorney's fees is whether a claim has been denied by the insurer without reasonable foundation. In the present case, the insurer was willing to make payment to the claimant but an honest difference of opinion arose as to how to calculate work-loss benefits under the statute. We do not believe defendant acted unreasonably and therefore, we find that an award of attorney's fees is not appropriate in this case.

Accordingly, we enter the following

ORDER

And now, this May 9, 1985, we enter judgment for plaintiff and against defendant in the amount of $13,896 plus interest computed in accordance with the statutory provisions. We make no award for attorney's fees.