## Orsen v. General Accident & Life Assurance Corp.

412

*Clarence D. Neish*, for plaintiff.
*Warren Ferry,* for defendant

KUNSELMAN, *J.,* October 21, 1985—The parties' cross motions for summary judgment raise the question of whether a victim who is otherwise entitled to receive work loss benefits under the No-fault Act (now repealed) is precluded from recovering such benefit because she subsequently applied for and received unemployment compensation benefits. We hold that she is not so precluded and therefore grant her motion for summary judgment.

The parties have agreed upon the facts and so summary judgment may be entered if appropriate to do so. Pa. R.C.P. 1035(b), Dowlin v. Coatsville School District, 22 Pa. Commw. 433, 350 A.2d 190, (1975).

Plaintiff, Elena M. Orsen, sustained injuries in an automobile accident which occurred on February 28, 1982. The injuries resulted in an almost complete loss of sight in the left eye which causes glare, discomfort and decreased depth perception. At the time of the accident she was employed full time as a clerk-typist at an annual salary of $13,077. Her injuries rendered her totally disabled from performing the duties of her employment.

Her employer had a wage continuation plan under which she continued to receive her full salary each month until May 24, 1982, in the total amount of $3,120.67, and one-half her salary each month thereafter until November 30, 1982 in the total amount of $3,269.28. During the initial period of

the wage continuation plan, defendant paid her no work loss benefits. After May 24, 1982, defendant paid her monthly partial work loss benefits through November 30, 1982 in the total amount of $2,833.35.

In November 1982, her employer closed its plant, terminated all employees, and instructed them to apply for unemployment compensation benefits. Plaintiff applied for such benefits and received them from November 16, 1982 through November 12, 1983 in the total amount of $7,156. Defendant discontinued payment of work loss benefits to plaintiff in November 1982 and has refused to resume payment of such benefits.

Her suit is for the work loss benefits, interest thereon at the statutory rate of 18 percent, and counsel fees.

## WORK LOSS BENEFITS

Defendant argues that, since plaintiff had to be available for and capable of employment in order to receive unemployment compensation benefits, she is not entitled to work loss benefits. In the alternative, defendant argues that, if plaintiff is entitled to additional work loss benefits, it is entitled to a credit for the amount of unemployment compensation received by plaintiff.

Defendant's position with regard to plaintiff's right to receive work loss benefits is based upon its perception that a person must meet the eligibility requirements of both work loss benefits and unemployment benefits at the same time, and that the eligibility requirements for each are mutually inconsistent. Defendant's perception that the eligibility requirements are inconsistent is wrong.

The relevant eligibility requirements of the Unemployment Compensation Law are set out in Arti-

cle IV, section 401, as amended. That section provides, in part, that "compensation shall be payable to any employee who is or becomes unemployed, and who . . . Is able to work and available for suitable work . . . " 43 P.S. §901(d)(1). From case law, it is obvious that the phrase "able to work" does not mean "able to perform the most recent or customary work" as defendant's argument suggests. Instead, it means "able to perform *some* type of work." See Sturdevant Unemployment Compensation Case, 158 Pa. Super. 548, 45 A.2d 898 (1946); Ziemba v. Pennsylvania Unemployment Compensation Board of Review, 16 Pa. Commw. 615, 330 A.2d 566 (1975).

The eligibility requirements of the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, (now repealed) for work loss benefits are found in several sections. Section 103 defined "loss" as "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, . . . , work loss, . . . " The same section defined "work loss" as including "loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this Act."

Section 205 required the work loss for a person who was regularly employed to be calculated by:

"(1) determining his probable weekly income by dividing his probable annual income by 52; and (2) multiplying that quantity by the number of work weeks, . . . , the victim sustains loss of income during the accrual period.

'Probable annual income,' was defined in section 205 as 'twelve times the monthly gross income *earned by the victim from work* in the month preceding the month in which the accident resulting in injury occurs, . . . ' " (Emphasis added.)

A fair reading of these provisions establishes the eligibility requirements for work loss to be: (1) injury sustained in an automobile accident; (2) resulting in loss of income from the most recent or customary work. In fact, our Supreme Court has equated work loss to loss of a paycheck. See Kamperis v. Nationwide Insurance Company, 503 Pa. 536, 469 A.2d 1382 (1983). Because of this, and because a person is eligible for unemployment compensation if he is able to perform *some* work, the two requirements are not inconsistent.

We are likewise not persuaded by other arguments contained in defendant's brief. Defendant argues that, by enacting the No-fault Act, the legislature did not intend for a victim to earn more than he would have earned if not for the accident; that to allow plaintiff to receive both work loss and unemployment compensation benefits would permit "double dipping"; and that, since the legislature provided for a deduction of income earned from substitute work, it did not intend work loss benefits to be available for "double dipping."

Defendant has not brought to our attention a provision of the act which allows a deduction for income from substitute work and we have found none. We do find a section which provides for certain deductions in calculating net loss. These are limited to: (1) certain Social Security benefits; (2) Workmen's Compensation; (3) any state — required temporary non-occupational disability insurance; and, (4) other benefits "received by or available to an individual because of the injury from any government, . . . ." Section 206(a). Unemployment Compensation benefits are not included in any of the first three and cannot be included in the fourth because they are not received due to an injury.

If the legislature intended to allow the deduction of unemployment compensation benefits from work loss to prevent "double dipping", it could easily have said so as it did in the case of Workmen's Compensation. See Steppling v. Pennsylvania Manufacturers' Association Insurance Company, 328 Pa. Super. 419, 477 A.2d 515 (1984).

For the same reason, we conclude that defendant is not entitled to apply the Unemployment Compensation benefits as a set-off to the work loss benefits. In fact, section 106(e) specifically prohibits a deduction or set-off against basic loss benefits except as otherwise provided in the act.

## ATTORNEY'S FEES

Section 107(3) provides that the court may award claimant's attorney a reasonable fee based upon actual time expended if it determines that defendant has denied the claim without reasonable foundation. In this case, counsel for plaintiff filed an affidavit in which he set forth a detailed account of work done and the time expended. Based upon an hourly rate of $100 and a per diem rate of $800 for court time, his fee is calculated at $4,490. These rates are within the range normally charged for legal services performed by able and experienced counsel in Beaver County. In fact, defendant has not disputed either the time expended or the rates claimed. Defendant disputes the claim because it had reasonable foundation to deny plaintiff's claim.

It pins its reasonable foundation on the premise that ". . . plaintiff's contention [that she is entitled to both work loss and unemployment compensation at the same time] presents a novel issue which has not been addressed by the Pennsylvania courts." In other words, defendant claims that plaintiff's claim presented it with an issue of first impression. It thus

cites several cases in which it contends that, under such circumstance, attorney's fees would be denied.

The first case relied upon by defendant is Fandray v. Nationwide Mutual Insurance Company, 313 Pa. Super. 186, 456 A.2d 801 (1983). That case involved a claim for replacement services based upon some repair work on plaintiff's automobile and the installation of a garage door opener. The issue was whether the services were "ordinary and necessary". However, the basis of the court's denial of counsel fees was not that it was a case of first impression. Defendant had requested and received an interpretation from the insurance commissioner. Thus, the court concluded that the defendant had a reasonable basis for denying the claim, even though the interpretation by the insurance commissioner was not adopted by the court.

The next case relied upon is Hartleb v. Ohio Casualty Insurance Company, 305 Pa. Super. 231, 451 A.2d 506 (1982). That case involved a claim by defendant that plaintiff was not entitled to survivor's benefits or work loss benefits because plaintiff failed to show dependency. The trial court refused to award attorney's fees because it concluded that the refusal to pay the claims was based upon good faith regarding a legitimate issue of law. The Superior Court concluded that the trial court did not abuse its discretion, in view of the case law, recent at the time, involving the dependency issue.

Thus, neither Fandray nor Hartleb are controlling on the issue of counsel fees in this case. Steppling v. Pennsylvania Manufacturers' Association Insurance Company, supra, is helpful in resolving the issue in this case.

That case tells us that the mere fact that this is a case of first impression does not provide defendant with a reasonable foundation for denying the claim.

"We have previously stated that absence of judicial precedent may not invariably provide an insurance carrier with 'reasonable foundation for denying a claim under the act, but where a non-frivolous issue is one of first impression, that fact is entitled to substantial weight in determining whether an obligor's denial of a claim is 'without reasonable foundation.' " Id, 328 Pa. Super. at 433.

Thus, we must first determine whether defendant's reason for denying plaintiff's work loss claim was "non-frivolous". As noted in our discussion concerning plaintiff's right to work loss benefits, defendant's interpretation of the meaning of the phrase "able to work" in the Unemployment Compensation Law has been rejected by our appellate courts since at least 1946. Defendant submitted no case law or citation to any authority in support of its position. Defendant's concern that plaintiff should not be permitted to "double dip" is not adequate since a right to a double recovery had been approved or alluded to by our appellate courts long before this suit was filed. See Steppling v. Pennsylvania Manufacturers' Association Insurance Company, supra, and Allstate Insurance Company v. Heffner, 491 Pa. 447, 421 A.2d 629 (1980).

Moreover, we think that it is significant that there are no court decisions on the issue raised by defendant either at the trial court level or appellate level. The economic conditions in Pennsylvania during the past five years or more has resulted in a substantial number of furloughs from the work force. Therefore, it is difficult to imagine that other persons have not also been in the same or similar situations as plaintiff here. It would seem therefore that other insurance carriers have routinely honored such claims based upon their reading and understanding of the law.

For the foregoing reasons, we conclude that defendant's denial of plaintiff's work loss claim was frivolous and without reasonable foundation. As a result, we will grant the claim for counsel fees.

## STATUTORY INTEREST

Having concluded that plaintiff is entitled to receive work loss benefits, her right to statutory interest is clear. Section 106(a)(2) of the No-fault Act provided for interest at the rate of 18 percent per annum on overdue payments. Payments are "overdue" under that section "if not paid within 30 days after receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained, . . . ."

The question we must decide is when did the interest begin to accrue and on what amount. Plaintiff claims that interest should be paid on the full amount due — $12,666.65 — from April 1, 1982. Defendant claims that, on that date, plaintiff had not sustained any work loss since she was receiving her full salary.

The agreed facts establish that plaintiff received her full monthly salary for the months of March, April and part of May, 1982 pursuant to her employer's wage continuation plan. The payments received were bi-weekly payments of $544.88 each through May 15 and a payment of $396.27 on May 31, 1982. Thus, she had no loss of gross income during that three month period. Beginning June 15, 1982, she received bi-weekly payments of $272.44 from her employer, representing one-half of her monthly salary. These payments continued through November 30, 1982.

Since the No-fault Act defined "work loss" as "loss of gross income", we conclude that plaintiff did not sustain any work loss until she began receiv-

ing one-half her monthly salary from her employer. This was effective June 1, 1982. We have calculated plaintiff's probable weekly income pursuant to section 205 at $251.48 per week. Since she received $272.44 each two weeks from her employer, she received gross income each week in the amount of $136.22. Therefore, she sustained work loss under the act in the amount of $115.26 each week from June 1, 1982 until December 1, 1982 and in the amount of $251.48 each week thereafter.

Defendant paid plaintiff partial work loss benefits from May 24, 1982 through November 30, 1982 in the total amount of $2,833.35. We infer that the amount paid by defendant represented the difference between the work loss benefits plaintiff was entitled to receive and the one-half salary payments from her employer. Thus, defendant is obligated to pay the difference between the maximum work loss recoverable under the act — $15,000 — and the amount of work loss paid — $2,833.35 — or $12,166.65. However, the statutory interest must not be charged on the full amount from December 1, 1982. This is for the reason that the entire amount was not due at that time.

Instead, the work loss was payable in monthly increments, the first increment payable by December 31, 1982. We have calculated the interest due on each increment from its overdue date and have attached the calculation hereto as Appendix A. Interest will be awarded pursuant to that calculation at $4,844.68 through October 15, 1985.

## ORDER

And now, this October 21, 1985, defendant's motion for summary judgment is dismissed and plaintiff's motion for summary judgment is granted. Judgment is hereby entered in favor of plaintiff,

Elena M. Orsen, and against defendant, General Accident and Life Assurance Corporation, Ltd., in the following amount of:

A. Work Loss Benefits $12,166.65

B. Interest at 18 percent through
      October 15, 1985          4,844.68

                                  $17,011.33

In addition, judgment is entered in favor of Clarence D. Neish, Esq. and against defendant, General Accident and Life Assurance Corporation, Ltd., for counsel fees in the amount of $4,490.

Since plaintiff, Richard Orsen, has no cause of action against defendant, the complaint as to him is dismissed.